In the MATTER OF STATISTICAL TABULATING CORP., INC., Debtor.

Appeal of UNITED STATES of America.

No. 94–2331.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1994.

Decided Aug. 2, 1995.

Gary R. Allen, Bruce R. Ellisen, Bridget M. Rowan (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Joel R. Nathan, Asst. U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, for U.S.

Bret A. Rappaport, Paula K. Jacobi (argued), Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for LaSalle Nat. Bank Lakeview.

Jerome Barton Kalish, Kalish & Colleagues, Chicago, IL, for Statistical Tabulating Corp., Inc.

Before BAUER, GARZA,* and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This case presents a novel issue regarding the jurisdiction of bankruptcy courts. During the time the government was appealing an order of the bankruptcy court, the bankruptcy court disposed of remaining matters and dismissed the bankruptcy. LaSalle Bank Lake View ("LaSalle") now argues that the dismissal deprived the district court of jurisdiction to rule on the matter on appeal, and deprived the bankruptcy court of jurisdiction to accept the case on remand from the district court. This cannot be the result intended by Congress, and we therefore reverse.

## I. BACKGROUND

Statistical Tabulating Corporation ("StatTab") filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 27, 1990. The government submitted a proof of claim in that case for delinquent employment taxes. In order to determine its rights in relation to StatTab's other major creditor and lien holder, LaSalle, the government filed an adversary proceeding. As a result of that proceeding, the bankruptcy court entered an agreed order stating that LaSalle's lien had priority over the government's claim.

The bankruptcy court allowed StatTab's operating assets to be liquidated in June and August of 1990, and following the liquidation, LaSalle asked the bankruptcy court to turn over to LaSalle all the proceeds obtained from the liquidation (amounting to approximately $730,000) to partially satisfy its lien. LaSalle failed to properly notify the government of this motion, however, and the government did not appear in court to object. The court allowed the turnover and when the government learned belatedly of the court's order, it appealed to the district court, arguing that LaSalle had failed to properly serve notice of the motion for turnover, and that the turnover itself was improper because it provided LaSalle a greater share than had been intended by the agreed order that emerged from the adversary proceeding.[1]

While the government's appeal was pending, the remainder of StatTab's assets were liquidated, and LaSalle moved for a turnover of those amounts as well as for dismissal of the case. This time, LaSalle properly served the government with its motion, and the government did not object to the turnover. Although the government called the bankruptcy court's attention to the matter pending on appeal, and suggested that the court keep the case open, the government did not for-

---

* The Honorable Emilio M. Garza of the Fifth Circuit Court of Appeals, sitting by designation.

1. The concurrence relies on a line of cases where separate adversary proceedings or related state law claims were pending in the bankruptcy court or on appeal when the underlying bankruptcy was dismissed. Hence, these cases address what happens to a "related proceeding" when the underlying bankruptcy is dismissed. That is simply not the case here. Rather than a related proceeding, the matter on appeal was an order arising out of the underlying bankruptcy proceeding itself. We agree with the concurrence that if the matter on appeal had been a separate adversary proceeding or a related state law claim, the bankruptcy court would have discretion to retain jurisdiction over the related proceeding. As explained *infra*, because the matter on appeal arose from the underlying bankruptcy proceeding itself, and because the dismissal of the bankruptcy proceeding did not moot the matter on appeal, the bankruptcy court did not have the power to dismiss the matter on appeal and did not have discretion to refuse to abide by the mandate of the district court.

mally object to the dismissal of the case. The court disbursed the remaining assets to LaSalle and dismissed the case.

Approximately three months later, on April 16, 1992, the Honorable John A. Nordberg of the United States District Court for the Northern District of Illinois ruled in the government's favor in the pending appeal, holding that LaSalle had failed to properly serve notice of the first turnover motion, and directing the bankruptcy court to consider whether the agreed order in fact contemplated that LaSalle would hold a priority position over the government in all of the proceeds of StatTab.[2] When LaSalle did not respond to the government's discovery, the government moved to reopen the case before the bankruptcy court and to compel a response to its discovery.

The bankruptcy court, *sua sponte*, questioned its jurisdiction to reopen the case and invited briefs on the subject. After full briefing, the bankruptcy court denied the motion to reopen, concluding that it no longer had jurisdiction to consider the issue remanded because it had previously dismissed the underlying case. The government appealed that decision to the district court,[3] which affirmed on March 21, 1994, explaining that the case had been dismissed, not closed and therefore could not be reopened. The government now appeals that decision.

## II. DISCUSSION

LaSalle argues that the bankruptcy court lacked jurisdiction to "reopen" the case because dismissal of the underlying proceeding results in a dismissal of all related proceedings, including, apparently, matters then pending on appeal. LaSalle makes much of the distinction between closing a bankruptcy case and dismissing a bankruptcy case. A closed case, LaSalle argues, can be reopened for good cause in the court's discretion. A dismissed case, however, can never be "undismissed" in LaSalle's view, because the bankruptcy court divests itself of jurisdiction when it dismisses a case. Thus, LaSalle argues that the bankruptcy court is without jurisdiction even when a pending appeal that was not mooted by the dismissal is remanded to the court for further proceedings.

We see several problems with LaSalle's position. First, LaSalle admits that when a case is dismissed, "it is as if there had been no bankruptcy." (LaSalle Br. at 8.) Section 349 of the Bankruptcy Code explains that a dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case...." The objective of section 349 is to "restore all property rights, insofar as is practicable, to their positions when the case was filed." *In re Safren*, 65 B.R. 566, 571 (Bankr.C.D.Cal.1986) (citations omitted); *In re Newton*, 64 B.R. 790, 793 (Bankr.C.D.Ill.1986) (to the extent possible, dismissal of a petition reverses what has transpired during a bankruptcy). A literal reading of section 349 then would require LaSalle to return to the estate the $730,000 that it received in the initial turnover. LaSalle does not argue, however, the dismissal had that effect here.[4]

In LaSalle's view, when a bankruptcy court dismisses a case, it dismisses even those discrete issues which may be pending on appeal in the district court and that having done so, the bankruptcy court cannot accept the case back on remand from the district court because the case no longer exists. Carrying LaSalle's argument to its logical conclusion, the bankruptcy court could

---

2. LaSalle moved for a reconsideration of the ruling and on June 2, 1992, the district court denied LaSalle's motion to reconsider and remanded the case to the bankruptcy court in accordance with the April 16, 1992 memorandum opinion and order. LaSalle did not appeal the district court's decision to this court.

3. The case was assigned this time to the Honorable Ann C. Williams of the United States District Court for the Northern District of Illinois for the purposes of this appeal.

4. The district court appears to have assumed that this was a typical dismissal, where the parties were returned to their pre-petition status, and the assets were restored to the estate. Such was not the case here. This was a "liquidating Chapter 11" and the bankruptcy court clearly meant for its disbursements to creditors to retain their effect following the dismissal. If this had been a typical dismissal, and the assets had been restored to the estate, the matter on appeal may well have been mooted by the dismissal.

avoid review by the district court simply by disbursing the estate's assets and dismissing the case. LaSalle's interpretation would also suggest that the bankruptcy court and the district court must have concurrent jurisdiction over issues pending on appeal. Neither of these conclusions can be the result Congress intended in Section 349.

■ Dismissal of a bankruptcy proceeding normally results in dismissal of related proceedings because federal jurisdiction is premised upon the nexus between the underlying bankruptcy case and the related proceedings, but this general rule is not without exceptions. *In re Morris*, 950 F.2d 1531, 1534 (11th Cir.1992). Nothing in Section 349 requires that result in all cases. As the Ninth Circuit has explained, "[s]ection 349 of the Bankruptcy Code lists the various effects of dismissal of the underlying bankruptcy case; conspicuously absent from that list is automatic termination of jurisdiction of related cases." *In re Carraher*, 971 F.2d 327, 328 (9th Cir.1992). In the case of adversary proceedings, numerous courts have ruled that jurisdiction is not automatically terminated with the dismissal of the underlying bankruptcy case, and that bankruptcy courts have discretion to retain jurisdiction over adversary proceedings. *Morris*, 950 F.2d at 1534–35 (citations omitted). The rationale for retention of jurisdiction over an adversary proceeding is that some cases "have progressed so far that judicial interference is needed to unravel or reserve the rights of parties." *Morris*, 950 F.2d at 1535.

LaSalle makes much of the fact that the appeal at issue here did not derive from a separate adversary proceeding but from a turnover order that was entered on the bankruptcy case itself. Under the facts of this case, however, we find that is a distinction without a difference. The matter on appeal involved a discrete dispute between two creditors that was not mooted by the dismissal of the bankruptcy itself. In challenging the turnover order, the government was asking the district court to interpret the agreed order which emerged from the adversary proceeding between itself and LaSalle. The debtor's rights were not implicated in this dispute, as the sole issue was whether La-Salle was entitled to all or only a portion of the proceeds. The district court's remand for further exploration of that issue did not require the court to "dis-inter" the debtor, as LaSalle insists. Factually, then, the appealed matter was very much like the appeal of a separate adversary proceeding.

Furthermore, the general rule that when the underlying case is dismissed, all related proceedings are dismissed is clearly in tension with the general rule that the filing of a notice of appeal divests a lower court of jurisdiction over the matter on appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982); *In re Alwan Bros. Co.*, 115 B.R. 148, 150 (Bankr.C.D.Ill.1990) ("[u]pon the filing of a notice of appeal from an order of the bankruptcy court, the bankruptcy court loses jurisdiction over matters involved in the appeal").

> The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.... The 'jurisdictional significance' of a pending appeal applies equally to a bankruptcy court. The filing of a notice of appeal to a district court divests a bankruptcy court of jurisdiction to proceed with matters raised by such appeal. This divestment of jurisdiction preserves the integrity of the appellate process by avoiding needless confusion which would flow from putting the same issues before two courts at once.

*In re de Kleinman*, 150 B.R. 524, 526 (Bankr. S.D.N.Y.1992) (citations omitted). In the instant case, the integrity of the appellate process is at serious risk if a bankruptcy court can deprive a district court of jurisdiction over an appeal by simply dismissing the underlying bankruptcy.

LaSalle's argument that the whole case, including pending appeals, falls when the underlying bankruptcy is dismissed has force where the matter on appeal is entirely dependent on the existence of the bankruptcy. For example, LaSalle relies heavily on *In re Income Property Builders, Inc.*, 699 F.2d 963 (9th Cir.1982), a case where the matter on

appeal was whether the bankruptcy court had properly lifted the automatic stay.[5] Because the stay is dependent on the existence of the bankruptcy, the dismissal of the case disposed of any dispute about the stay. In other words, the dismissal of the case brought about a full resolution of all disputes between the parties, mooting the controversy regarding the stay.

■ In contrast, in the instant case, a live controversy still existed between two creditors when the bankruptcy court dismissed the underlying bankruptcy. The dismissal did not fully resolve or otherwise moot the issue on appeal. Having lost jurisdiction over the matter on appeal, the bankruptcy court did not have the power to dismiss the portion of the case that was on appeal. Nor did the bankruptcy court need to "retain" jurisdiction over the case in order to be able to assert jurisdiction once the case was remanded.

■ We therefore agree with the government that as long as the controversy had not been rendered moot by subsequent events, the bankruptcy court should have accepted the mandate of the district court and revisited the agreed order as directed. A lower court is not free to ignore the mandate of a higher court. *Briggs v. Pennsylvania R.R. Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948) ("[A]n inferior court has no power or authority to deviate from the mandate issued by the appellate court."); *In re Roberts,* 846 F.2d 1360, 1363 (Fed.Cir.1988) ("Unlike the authority to reconsider its own rulings, a district court is without choice in

obeying the mandate of the appellate court."). A bankruptcy court is similarly bound by this rule.

## III.  CONCLUSION

For the foregoing reasons, we reverse the district court's judgment of March 21, 1994 affirming the order of the bankruptcy court, and remand the case to the bankruptcy court for further proceedings consistent with this opinion and with the district court's April 16, 1992 memorandum opinion and order remanding the government's first appeal in this case to the bankruptcy court.

REVERSED AND REMANDED.

GARZA, Circuit Judge, concurring:

Although I agree with the majority's implicit holding that the dismissal of the underlying bankruptcy case does not deprive the district court of the power to remand a proceeding that was appealed prior to the dismissal, I disagree with the majority's holding that the remand deprives the bankruptcy court of its discretion to 1) consider its own jurisdiction and 2) decide whether it should actually adjudicate the dispute. For that reason, I concur in the judgment only.

I agree with the majority's statement that "[d]ismissal of a bankruptcy proceeding normally results in dismissal of related proceedings because federal jurisdiction is premised upon the nexus between the underlying bankruptcy case and the related proceedings,[1] but this general rule is not without exceptions." At 1289.[2] The question is

---

5. LaSalle also cites *In re Woodhaven, Ltd.,* 139 B.R. 745 (Bankr.N.D.Ala.1992) and *Matter of Garcia,* 115 B.R. 169 (Bankr.N.D.Ind.1990) for the proposition that a dismissed case can never be "undismissed." However, no appeal was pending in the district court in either of these cases when the underlying bankruptcy was dismissed.

1. The confirmation of a reorganization plan or the close of a bankruptcy estate regularly results in the dismissal of related claims. *See In re Querner,* 7 F.3d 1199, 1201 (5th Cir.1993) ("[A]s a general rule the dismissal or closing of a bankruptcy should result in the dismissal of related proceedings."); *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989) ("As a general rule, the dismissal of a bankruptcy case should result in the dismissal

of 'related proceedings' because the court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings."). This result occurs because the nexus between the related claim and the bankruptcy estate no longer exists. *See In re Querner,* 7 F.3d at 1201 ("The general rule favors dismissal because the court's jurisdiction over the related proceedings depends upon the nexus between the underlying bankruptcy case and the related proceeding.").

2. *See also In re Querner,* 7 F.3d at 1201 ("Notwithstanding the general rule, however, nothing in the statute governing bankruptcy jurisdiction mandates automatic dismissal of related proceedings upon termination of the underlying bankruptcy case."); *In re Carraher,* 971 F.2d 327,

whether an exception applies here. Although it is partially correct that "[t]he rationale for retention of jurisdiction ... is that some cases 'have progressed so far that judicial interference is needed to unravel or reserve the rights of parties,'" at 1289 (citation omitted), the rationale for retaining jurisdiction turns on more than the degree to which a case has progressed.

In this case, "[t]he debtor's rights were not implicated in this dispute, as the sole issue was whether LaSalle was entitled to all or only a portion of the proceeds." At 1289. Therefore, regardless of the outcome, there will be no return of funds to the estate. LaSalle appears to argue that because the estate no longer exists, neither does any nexus. I distinguish, however, "between the determination of the existence of jurisdiction at the outset of [the dispute] and the determination of whether 'related' claims should be dismissed with the dismissal of the bankruptcy case." *In re Smith*, 866 F.2d at 580.[3] Turnover actions arise out of the bankruptcy case and proceedings initiated to correct errors in a turnover action are related to that bankruptcy case; accordingly, initial jurisdiction existed.

The question now is whether the bankruptcy court still had jurisdiction over the remanded proceeding after the underlying bankruptcy had been dismissed. Because LaSalle failed to give the government proper notice of the turnover action, the bankruptcy court must reconsider the entire turnover action as if it had not yet been heard. Because the underlying bankruptcy case has been dismissed,[4] the first question a bankruptcy court must address is whether the circumstances warrant retention of bankruptcy jurisdiction. The majority, however, would deprive the bankruptcy court of its discretion and would mandate actual adjudication of this proceeding. I would allow the bankruptcy court its full range of authority.[5]

In determining whether to retain jurisdiction, courts look to four factors: economy, convenience to the parties, fairness to the parties, and comity. *Querner*, 7 F.3d at 1202; *In re Carraher*, 971 F.2d at 328; *In re Morris*, 950 F.2d at 1534. Thus, when claims had been pending for several years and concerned issues with which bankruptcy courts are familiar, the factors have warranted continuing jurisdiction. *See, e.g, In re Carraher*, 971 F.2d at 328 (finding postbankruptcy jurisdiction appropriate where comity not implicated because issue concerned res judicata effect of prior bankruptcy decision and claims had been pending for six years); *In re Morris*, 950 F.2d at 1534 (continuing jurisdiction over contract claim that had been pending six years); *In re Smith*, 866 F.2d at 580

328 (9th Cir.1992) ("[B]ankruptcy courts are not automatically divested of jurisdiction over related cases when the underlying bankruptcy case is dismissed.").

**3.** *See also In re Querner*, 7 F.3d at 1201 (addressing existence of jurisdiction "while the [bankruptcy] case was proceeding"); *In re Morris*, 950 F.2d 1531, 1534 (11th Cir.1992) (looking to whether the dispute "was related to the bankruptcy case at the time of its commencement").

**4.** The parties, including the Government, agreed or at least acquiesced to the dismissal. *See* at 1287.

**5.** I find this situation analogous to that in which the proceeding in question concerns only matters of state law. Under the majority's reasoning, if the remanded dispute rested only on issues of state law, the bankruptcy court would nonetheless be required to adjudicate it. Resolution of state claims, however, properly remains within a federal court's *discretionary* pendent jurisdiction. *See In re Querner*, 7 F.3d at 1202 (analogizing

postbankruptcy jurisdiction over related claims to pendent jurisdiction over state law claims) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 353, 108 S.Ct. 614, 620–21, 98 L.Ed.2d 720 (1988)); *In re Carraher*, 971 F.2d at 328 ("turn[ing] for guidance to cases considering the authority of federal district courts to retain pendent state claims"); *In re Morris*, 950 F.2d at 1534 ("The disposition of an adversary proceeding is appropriately compared to the disposition of pendent state claims...."); *In re Smith*, 866 F.2d at 580 ("[d]rawing upon an analogy to the disposition of ancillary and pendent claims"). Indeed, the Supreme Court in *Carnegie–Mellon* rejected an argument that would require the federal district courts to retain jurisdiction over pendent state claims after the companion federal claims had been dismissed: "Under petitioners' suggested approach, district courts would retain jurisdiction over cases that ... properly belong in state courts. There is no reason to compel or encourage district courts to retain jurisdiction over such cases when the alternative of remand is readily available." *Carnegie–Mellon*, 484 U.S. at 352 n. 10, 108 S.Ct. at 620 n. 10.

(holding post-bankruptcy jurisdiction proper over fraud claim pending for four years). In contrast, continuing jurisdiction was not proper when the initiation of the dispute was recent, no action had been taken prior to the dismissal, and the dispute concerned issues of probate law, in which state courts had more expertise. *In re Querner,* 7 F.3d at 1202.

In this case, the dispute between LaSalle and the United States has been pending for several years. If the bankruptcy court declines jurisdiction, the parties would have to refile and relitigate the same issues in district court. Accordingly, judicial economy, convenience, and fairness favor jurisdiction. Moreover, because the issue remaining concerns bankruptcy law, not state law, comity is not implicated. Consequently, the factors stated above support the continuation of jurisdiction.

I would therefore hold that where a bankruptcy court dismisses a bankruptcy case while a matter related to the bankruptcy has been appealed, the bankruptcy court has the discretion to retain jurisdiction and decide the matter remanded by the appellate court. *In re Querner,* 7 F.3d at 1202 (citing *Carnegie-Mellon,* 484 U.S. at 353, 108 S.Ct. at 620–21); *In re Carraher,* 971 F.2d at 328; *In re Morris,* 950 F.2d at 1534; *In re Smith,* 866 F.2d at 580. Because the majority eliminates the bankruptcy court's discretion and mandates adjudication without first addressing the question of the bankruptcy court's discretion to retain jurisdiction,[6] I cannot agree with its reasoning. Accordingly, I concur in the judgment.

---

6.   *See In re Morris,* 950 F.2d at 1535–36 (remanding for consideration of merits of appeals only because "we cannot say that the bankruptcy court abused its discretion by retaining jurisdiction over the adversary proceeding....").