**In re Robert A. REX, Debtor.**

**Bankruptcy No. 89–13751DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 26, 1998.

---

7. 11 U.S.C. § 329(b)(2).

Michael P. Kelly, Cowan & Kelly, P.C., Langhorne, PA, former attorney for Debtor.

David G.C. Arnold, Arnold & Florig, Norristown, PA, Robert M. Rex, Philadephia, PA, for Debtor.

Edward Sparkman, Philadelphia, PA, standing Chapter 13 Trustee.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA, U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

At issue, on remand from a District Court order of December 22, 1997 ("the D.C. Order"), reversing and remanding our Order of September 2, 1997 ("the Appealed Order"), denying the Debtor's Motion to Reopen and Enter Discharge ("the Motion"), is whether relief should be granted to ROBERT A. REX ("the Debtor"), under Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9024, incorporating Federal Rule of Civil Procedure ("F.R.Civ.P.") 60(b)(6), from an Order of March 16, 1995, dismissing this case ("the Dismissal Order"). Although we sympathize with the plight of the Debtor, we hold that relief cannot be granted under these Rules because the Debtor and his counsel were at fault in allowing the Dismissal Order to be entered. Thus, this situation falls under the purview of F.R.Civ.P. 60(b)(1), dealing with mistake, inadvertence, surprise and excusable neglect, pursuant to which a motion must be brought within one year after the order or judgment in question. Since the Debtor filed the Motion more than two years after the entry of the Dismissal Order, the Motion is untimely, and it cannot be maintained under F.R.Civ.P. 60(b)(6). We will therefore reinstate the Appealed Order denying the Motion.

## B. PROCEDURAL AND FACTUAL HISTORY

On October 11, 1989, the Debtor filed the instant individual Chapter 13 bankruptcy case. His Chapter 13 Plan ("the Plan"), confirmed on June 20, 1990, called for payments to the Standing Chapter 13 Trustee ("the Trustee") of $80.00 per month for sixty months. It also provided for payment of $1,000 towards priority counsel fees, no payments to secured creditors, and "[u]p to $4,088.00 to unsecured creditors." The Debtor testified that he was at all times current on his mortgage and that the only debts that he desired to discharge were credit card indebtednesses. This caused us to query why Chapter 13 instead of Chapter 7 was chosen, and the Debtor, who indicated no appreciation of the distinction between the two, was unable to explain the reason. *See* page 63 n. 2 *infra.*

The Debtor duly commenced his payments to the Trustee pursuant to the Plan in December 1989 and continued to make payments through October 1994. It appears from the Trustee's case report that the Debtor made all of the sixty payments required under the Plan and even made an unnecessary sixty-first payment in November 1994.

In early 1995 this court embarked on a program to close all dated cases which inappropriately remained on our docket. Pursuant thereto, in February 1995, the Clerk's Office sent notices of show cause hearings to all parties whose cases predated 1990, and whose cases should therefore ordinarily already have either been discharged or dismissed for non-payment, as their age exceeded the 60–month plan period maximum. *See* 11 U.S.C. § 1322(d); and *In re Cobb,* 122 B.R. 22, 26–27 (Bankr.E.D.Pa.1990) (five-year maximum period of payments begins 45 days after the filing of a case).

The Debtor acknowledges receipt of a Notice of Hearing, set for March 2, 1995, to show cause why this case should not be dismissed since five years had lapsed since its inception, and his counsel did not deny

that he received such a notice as well. The Debtor did nothing when he received the notice. The Debtor's inaction was, per his testimony, based on his failure to understand the difference between a dismissal and a discharge in his case, and his belief that the notice was benign. The Debtor's counsel, who certainly understood this distinction, testified that he assumed that the Debtor was delinquent in his payments in light of the notice, and made no attempts to contact his client to check on his payment status. Therefore, neither the Debtor nor his counsel attended the March 2, 1995, hearing.

On March 2, 1995, reporting that he was uncertain whether all payments due to unsecured creditors under the Plan had not been made, the Trustee continued the hearing until March 16, 1995. On March 16, 1995, after the court passed the case after calling to the attention of the Trustee the fact that this case was over five years old, the Trustee recommended dismissal.

At the hearing on January 14, 1998, the Trustee theorized that the reason for this recommendation was that he then believed that the Plan required payments of $4,088 to the unsecured creditors. By way of explanation, Sears and Roebuck Co., scheduled as an unsecured creditor, had filed a proof of claim indicating that one of its claim was secured and had received a full $734.63 payment on its claim. Deducting a $700 priority claim payment to Counsel and the Trustee's ten (10%) percent commission lowered the total amount allocated to the remaining unsecured creditors below $4,088. In his testimony before us on remand on January 14, 1998, the Trustee testified that his recommendation may have been in error. He now believes that the Plan requirement of payments "up to $4,088" allowed the Debtor to remit (apparently) any amount or perhaps nothing at all to general unsecured creditors.[1]

Subsequent to our entry of the dismissal order, same was noticed to all interested parties, including the Debtor and his counsel by the Clerk's office. Counsel testified that

---

1. We note that this interpretation of the Plan, while literally correct, appears to us to render the terms of the Plan potentially misleading to unsecured creditors. If $4,088 was not to be paid to general unsecured creditors, there was no reason to reference this or any other figure in the Plan.

he received this notice, but was not moved to take any action because he still believed, having never contacted his client to verify same, that the dismissal was justified by the Debtor's alleged payment delinquencies. The Debtor testified that he did not recall receiving this notice but we must assume that he did. *See Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418–19, 76 L.Ed. 861 (1932); *In re Ferrell,* 1998 WL 10367, at *3 (Bankr.E.D.Pa. January 6, 1998); and *In re Ryan,* 54 B.R. 105, 106–07 (Bankr. E.D.Pa.1985).

The Debtor testified that, at some point in 1996 or 1997, he began receiving bills from certain creditors listed on his Schedules. He stated that he sent these to his counsel. However, the Debtor further testified that, until his wife (who was present at the hearing but did not testify) contacted his counsel in February 1997, he did not become aware of the implications of the dismissal order and his predicament. Counsel testified that he contacted the Trustee to discuss this matter for the first time in April 1997. When it was not resolved, counsel, on July 10, 1997, filed the Motion at issue.

The entire substance of the Motion is as follows:

### MOTION TO REOPEN CASE AND ENTER DISCHARGE

1. Debtor filed a Chapter 13 on October 11, 1989.
2. The Plan was confirmed on June 22, 1990.
3. The base amount due under the plan was $4,800.00.
4. The last payment of $80.00 was paid on October 19, 1994 for a grand total of $4,800.00.
5. This case was dismissed.
6. A discharge should have been entered. WHEREFORE, kindly re-open this case in order to allow a Discharge to be entered.

A hearing on the Motion was scheduled on September 2, 1997. No witnesses were called. Counsel presented the Trustee's case report showing payments totalling at least $4,800 to the Trustee as his sole evidence in support of the Motion. After a brief colloquy on that date, we entered an order stating that, "although no objection was raised, finding the Motion extraordinary and untimely," it was denied.

The Debtor appealed this Order, per *pro bono* replacement counsel. Having reviewed the appellate brief, we note that the Debtor argued on appeal that (1) there was nothing "extraordinary" about reopening the instant case; and (2) the result was unjust to the Debtor.

The D.C. Order states that, since the instant case was dismissed, the aspect of the Motion requested that the case be reopened was inappropriate, citing *In re Income Property Builders, Inc.,* 699 F.2d 963, 965 (9th Cir.1983); *In re Lewis & Coulter, Inc.,* 159 B.R. 188, 191 (Bankr.W.D.Pa.1993); and *In re Woodhaven, Ltd.,* 139 B.R. 745, 748 (Bankr.N.D.Ala.1992). *Accord, In re King,* 214 B.R. 334, 336 (Bankr.W.D.Tenn.1997). Instead, the D.C. Order holds that the Motion should have been decided solely under F.R.B.P. 9024 and F.R.Civ.P. 60(b)(6), despite the fact that neither the Motion nor counsel's appellate brief invoked same. In a footnote, the D.C. Order further states that "[i]t would appear to this Court that to require appellant to re-petition for bankruptcy after he has presumably made all payments under the Plan in a timely fashion would be both inefficient and unfortunate." The district court nevertheless held that, since it was without an appropriate record to render a decision based on F.R.Civ.P. 60(b)(6), the matter must be remanded to this court for further findings in accordance therewith.

Upon receipt of the D.C. Order we entered an Order of January 5, 1998, scheduling a remand hearing on January 14, 1998. That Order further stated that "[i]t is anticipated that the Debtor and his counsel will present testimony, and the Standing Chapter 13 Trustee is requested to be available to provide testimony." In fact, the Debtor, his original counsel, and the Trustee did testify.

### C. DISCUSSION

1. *Reopening the Case Is a Procedural Issue Which Appears to Have Become Confused with the Substantive Issue at Hand.*

█ As mentioned, the Debtor, in his appellate brief, argues that this court should

have reopened this case pursuant to 11 U.S.C. § 350(b) despite the long delay since the entry of the Dismissal Order, because such relief is not subject to any time constraints. The Debtor cites to a number of bankruptcy cases holding that the standards for reopening cases is liberal, *e.g., In re Brennan,* 71 B.R. 706 (Bankr.E.D.Pa.1987); *In re Quackenbos,* 71 B.R. 693 (Bankr. E.D.Pa.1987); and *In re Skakalski,* 67 B.R. 448 (Bankr.W.D.Pa.1986). We agree with this principle. *See In re Young,* 70 B.R. 968 (Bankr.E.D.Pa.1987). However, what we attempted to accomplish in the Appealed Order, and we believe that the Motion requested us in a single pleading to do, was to decide both the procedural issue of whether the case should be reopened and the substantive issue of whether, after the case was reopened, the Debtor was entitled to relief simultaneously.

 The Debtor is correct in asserting that § 350(b) does not impose any time constraints on reopening cases. However, he fails to distinguish the lack of such constraints as to procedural issue of reopening the case from the time constraints applicable to the substantive aspects of the Motion. Reopening the case pursuant to § 350(b) would not, in and of itself, provide the Debtor with any substantive relief. Rather, it would have merely provided the procedural setting in which the Debtor could pursue such relief in a substantive motion. *See In re Statistical Tabulating Corp.,* 60 F.3d 1286, 1289–90 (7th Cir.1995), *cert. denied sub nom. LaSalle Bank Lake View v. United States,* 516 U.S. 1093, 116 S.Ct. 815, 133 L.Ed.2d 759 (1996); *In re Germaine,* 152 B.R. 619, 624 (9th Cir. BAP 1993); *In re Daniels,* 34 B.R. 782, 784 (9th Cir. BAP 1983); *In re Taylor,* 216 B.R. 515, 521–22 (Bankr.E.D.Pa.1998); and *In re David,* 106 B.R. 126, 128 (Bankr.E.D.Mich. 1989).

The D.C. Order goes to some length to distinguish between the reopening a case that is closed, a remedy which it finds is confined to cases which were not previously dismissed, and vacating a dismissal order, as was at issue here, citing the cases referenced at page 60 *supra* for this principle. However, as *Statistical Tabulating, supra,* points

out, 60 F.3d at 1289–90, this distinction may be misleading.

 It seems to us that reopening of any case which has been closed, whether by dismissal of the case or on any other basis, should ordinarily precede consideration of a substantive motion relative to that case. We generally require that all interested parties be notified of motions to reopen cases, so that no issue regarding lack of notice of the case's "rebirth" can arise. *But see Taylor, supra,* 216 B.R. at 521–22 (reopening of a case is generally not required to rule upon certain matters, such as a motion seeking a return of unclaimed funds). Only after the case is reopened would we then proceed to decide the substantive motion.

 We hasten to add that, in the interests of economy, we generally have no objection to a movant's combining the procedural motion to reopen a case with the substantive motion for the disposition of which the case is sought to be reopened. The only difficulty arises when, as here, the movant confuses the different time constraints on the procedural and substantive aspects presented by such a "combination" motion.

The D.C. Order precludes our reopening this case, although we must say that we would not be likely to follow it on this procedural aspect in other cases. We continue to believe that reopening any case closed for any reason is an appropriate first step before deciding a substantive issue in a previously-closed case. The D.C. Order does, however, properly focus this court and the parties to concentrate on the proper substantive issue, observing that it is controlled by F.R.B.P. 9024, incorporating F.R.Civ.P. 60(b)(6). We will now focus on that issue in reconsidering the Appealed Order on this remand.

2. *Since the Dismissal Order Was the Product of Mistake, Inadvertence, or Neglect by the Debtor and His counsel, Relief Cannot Be Granted to the Debtor on the Motion Under F.R.Civ.P. 60(b)(6).*

Federal Rule of Civil Procedure 60(b) provides in relevant part as follows:

On motion and upon such terms as are just, the court may relieve a party or a

party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence by which due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered and taken. . . .

■ It is well established that the various provisions of F.R.Civ.P. 60(b) are mutually exclusive, *i.e.*, that if the relief sought is based upon one of the reasons set forth in the first five clauses of the Rule, then it is unavailable "for any *other* reason" under clause (6). *See Pioneer Investment Services Co. v. Brunswick Associates, L.P.*, 507 U.S. 380, 393, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993); *In re University Medical Center*, 1989 WL 145926, at *2 (Bankr.E.D.Pa. Dec. 1, 1989); *King, supra*, 214 B.R. at 337; 12 J. MOORE, FEDERAL PRACTICE, ¶ 60.48[2], at 60–167 (3d ed.1997); and 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2864, at 362 (2d ed.1995). This is because any other interpretation would render the one-year time limitation imposed in 60(b)(1), (2), and (3) meaningless. Hence, in order for the Debtor to prevail upon the Motion, he must show that his reasons for requiring the relief sought do not fall within F.R.Civ.P. 60(b)(1), (2), or (3). We find that the instant facts do in fact constitute an instance of mistake, inadvertence, and/or neglect, whether it be excusable or inexcusable, or a combination of same, on the part of the Movant, which falls under F.R.Civ.P. 60(b)(1). Therefore,

F.R.Civ.P. 60(b)(6) cannot be invoked, and the Motion must be denied.

The facts of this case indicate that the Debtor did receive the Notice of Hearing to show cause why his case should not be dismissed. Nevertheless, he failed to attend the hearing or contact his counsel to ascertain the significance of same. Later, he received the order of dismissal, but again failed to contact his attorney to obtain any explanation. His explanation is that his inaction stemmed from his failure to understand that a dismissal is not a discharge. The Debtor's actions (or inaction) were thus due to a combination of a mistake as to the understanding of the terms "dismissal" and "discharge" as well as inadvertence and neglect in failing to properly obtain an explanation of any documents received in this case which were not understood from his counsel. Ignorance of the law renders the debtor's mistake as one within the scope of F.R.Civ.P. 60(b)(1) and not within the scope of F.R.Civ.P. 60(b)(6). *See* 12 J. MOORE, *supra*, § 60.48[3][c], at 60–174.

Furthermore, the testimony of the Debtor's counsel at that time indicates that he also received notice of the hearing and the Dismissal Order, but he took no further action as well, even so much as attempting to contact his client to ascertain whether he had a defense thereto. Counsel clearly knew the distinction between dismissal and discharge. His dereliction was a case of inadvertence and, in our view, *in*excusable neglect. We thus find that counsel's inadvertence and neglect was of a higher order than that of the Debtor. Moreover, counsel continued and compounded his pattern of neglect by delaying from February 1997 to July 1997 to file the Motion. This delay raises the issue of whether, as F.R.Civ.P. 60(b) requires generally, the Motion was filed "within a reasonable time."

However, in *Pioneer, supra*, 507 U.S. at 396–97, 113 S.Ct. at 1499, the Court makes perfectly clear that a client is held accountable for the actions and omissions of his counsel. *See also* 11 C. WRIGHT, *et al., supra*, § 2864, at 371–72 (favoring cases which hold that, even where the client is the innocent victim of a blunder by counsel, invocation of

F.R.Civ.P. 60(b)(6) is inappropriate). Hence, the Debtor cannot escape the fact that the combined neglect of himself and his counsel allowed the dismissal order to go unchallenged during the statutory time limit for bringing actions to vacate under F.R.Civ.P. 60(b)(1). *Compare* 12 J. MOORE, *supra,* § 60.48[3][6], at 60–171 ("In a vast majority of the cases finding extraordinary circumstances do exist so as to justify [F.R.Civ.P. 60(b)(6)] relief, the movant is completely without fault for his or her predicament; that is, the movant was almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought.").

■ It might at this point be queried as to what sort of circumstances F.R.Civ.P. 60(b)(6) *does* apply. As we intimated in the Appealed Order, such circumstance must be truly "extraordinary," in order to avoid this Rule's being interpreted as conferring a " ' "standardless residual of discretionary power to set aside" ' " court orders. *Moolenaar v. Government of Virgin Islands,* 822 F.2d 1342, 1346 (3d Cir.1987), quoting *Martinez–McBean v. Government of Virgin Islands,* 562 F.2d 908, 911 (3d Cir.1977), quoting in turn both *Mayberry v. Maroney,* 558 F.2d 1159, 1163 (3d Cir.1977); and *Mayberry v. Maroney,* 529 F.2d 332, 337 (3d Cir.1976).

The leading case granting such relief is *Klapprott v. United States,* 335 U.S. 601, 614, 69 S.Ct. 384, 390, 93 L.Ed. 1099 (1949), wherein the Court determined that the "other reason" language of F.R.Civ.P. 60(b)(6) vested the courts with the power to vacate judgments whenever, "for all reasons except the five particularly specified," such action is appropriate to accomplish justice. The breadth of this holding is narrowed, however, by the subsequent decision in *Ackermann v. United States,* 340 U.S. 193, 199–202, 71 S.Ct. 209, 212–13, 95 L.Ed. 207 (1950),

wherein the Court makes clear that any degree of voluntary or culpable action on the part of the movant will preclude F.R.Civ.P. 60(b)(6) relief. Consequently, relief under F.R.Civ.P. 60(b)(6) has been largely confined to cases where court orders were entered without any notice to the movant, an order was procured by undiscovered fraud of an adverse party, or the movant's health and circumstances (*e.g.,* incarceration) precluded participation. *See* 12 J. MOORE, *supra,* ¶ 60.48[3][b], at 60–171 to 60–173.

Like the district court, we have sympathy for the Debtor. It is indeed "inefficient and unfortunate" to require him to resort to a new Chapter 7 filing to obtain the relief he thought that he was entitled to in this case.[2] We regret any decision that could be said to advance the mystification of the bankruptcy powers for the unwary. However, in our minds there are superior, competing principles at play here, namely observance to the applicable rules of law as they are written; and secondly, motivating counsel and parties to be reasonably attentive to court notices and orders. We must therefore answer the specific question remanded to us by the D.C. Order for same, *i.e.,* whether the Debtor is entitled to relief on the Motion under F.R.Civ.P. 60(b)(6), with perhaps an unfortunate, but nevertheless resounding, negative.

## D. CONCLUSION

An order consistent with the expressed in the foregoing Opinion must be entered.

---

2. We considered adding to our order a requirement that counsel undertake such a filing *pro bono* in light of his advanced degree of culpability, but we decided that it was beyond our power to do so. Frankly, we question why the complexity, expense, and (as it turns out) potential pitfalls of Chapter 13 were introduced to the Debtor, who appears to have made no conclusive choice to not pursue Chapter 7 and whose financial

picture seemed to call for a Chapter 7 filing. We further assume that counsel will do the proper thing to rectify his errors without this court so ordering. We also regret that *pro bono* replacement counsel expended his time and energies on a pursuit of an appeal which appears unfruitful, as opposed to the lesser but more efficient effort of filing the proposed Chapter 7 case for the Debtor.