In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 20-1686

IN RE: CHAD ROBERT BULLOCK,

*Debtor.*

CHAD ROBERT BULLOCK,

*Debtor-Appellant,*

*v.*

RUSSELL C. SIMON,

*Trustee-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 19-cv-00310 — **Staci M. Yandle**, *Judge.*

_____

ARGUED DECEMBER 3, 2020 — DECIDED JANUARY 22, 2021

_____

Before SYKES, *Chief Judge,* and FLAUM and ST. EVE, *Circuit Judges.*

FLAUM, *Circuit Judge.* Debtor-appellant Chad Robert Bullock filed for bankruptcy but failed to disclose a workers' compensation claim on his required forms. As a result, when he received an award for his claim years later, trustee-appellee

Russell C. Simon moved to require debtor to amend his reor-
ganization plan to commit those proceeds to pay his creditors.
Debtor contended in bankruptcy court that he could exempt
his workers' compensation claim, but the court disagreed.
Thereafter, debtor complied with the court's order to amend
his reorganization plan. When he failed to make payments
pursuant to that new plan, the court dismissed his bankruptcy
case. In a separate but related adversary proceeding appealed
to the district court, the district court dismissed the case on
mootness grounds. On appeal, debtor challenges that deci-
sion and seeks to relitigate the exemption issue decided by the
bankruptcy court. That issue is mooted because he complied
with the very order requiring the reorganization plan's
amendment that he now seeks to challenge and because his
underlying bankruptcy case was dismissed. Therefore, we af-
firm.

## I. Background

Debtor petitioned for bankruptcy relief under Chapter 13
of the United States Bankruptcy Code on August 5, 2014. Trus-
tee was then appointed as the successor trustee for debtor's
bankruptcy case. In filing for bankruptcy, debtor failed to dis-
close on his Schedule B form (list of assets) a pending work-
ers' compensation claim that he had filed two months earlier
under the Illinois Workers' Compensation Act, 820 Ill. Comp.
Stat. 305/1. On his Schedule C form (list of exemptions), he
likewise failed to declare an exemption for the same. Based on
this nondisclosure, debtor proposed a sixty-month plan of re-
organization to pay $148 per month in addition to possible tax
refunds. The bankruptcy court confirmed this plan on Octo-
ber 17, 2014.

Years later, in August 2017, debtor received a workers' compensation settlement award for $92,430.84. Upon learning of the award, trustee filed a motion to compel debtor to disclose it. Debtor complied, listing the settlement proceeds as personal property on his Schedule B form and declaring the proceeds exempt on his Schedule C form under 820 Ill. Comp. Stat. 305/21 and 735 Ill. Comp. Stat. 5/12-1001(b). On July 20, 2018, trustee then filed a motion to compel debtor to file an amended plan of reorganization under 11 U.S.C. § 1329(a) that would provide for the turnover of debtor's workers' compensation award to fund distributions to his general unsecured creditors. Debtor had spent virtually all the award proceeds by that point and filed an adversary complaint in his bankruptcy case seeking a declaratory judgment from the bankruptcy court that he need not file an amended plan.

In February 2019, the bankruptcy court heard arguments on trustee's turnover motion (in the bankruptcy case) and debtor's adversary complaint (in the new adversary proceeding), ruling for trustee on both. With respect to trustee's turnover motion in the bankruptcy case, on March 1, 2019, the court ordered that debtor file an amended plan of reorganization to turnover his workers' compensation award funds and provide for payment of 100% of debtor's general unsecured claims, totaling around $15,000. The court further instructed that:

> [f]ailure to comply with this Order may result in the dismissal of this case without further notice or hearing. Nothing in this Order shall prohibit the Trustee from seeking leave from this

Court to impose a permanent bar to the dis-
charge of all scheduled and claimed debts
should this case be dismissed.

As for the adversary proceeding, the bankruptcy court sepa-
rately issued another order on March 1, 2019, denying
debtor's request for a declaratory judgment. Debtor then filed
an appeal to the Southern District of Illinois for both orders,
igniting two separate litigation tracks, one for the underlying
bankruptcy case and one for the adversary proceeding.

In the bankruptcy case, debtor moved before the bank-
ruptcy court to stay the bankruptcy proceedings without
posting an appeal bond, hoping to delay further proceedings
pending resolution of his appeal of the court's orders in the
adversary proceeding. The bankruptcy court denied debtor's
motion to stay; instead, the court granted trustee's motion for
a supersedeas bond and ordered that the bankruptcy pro-
ceedings would not be stayed unless debtor posted a $15,000
bond to protect the unsecured creditors' interests.

In lieu of posting the $15,000 bond, debtor twice amended
his plan of reorganization, on May 2 and May 13, 2019, to
comply with the bankruptcy court's March 1 order. Trustee
objected to both amended plans, but the bankruptcy court
confirmed debtor's May 13 amended plan. This plan required
debtor to pay a lump-sum payment of approximately $15,000
before the plan's expiration but was otherwise the same as the
original. Debtor failed to make the final payment under this
plan, so trustee filed a motion to dismiss the bankruptcy case,
which the bankruptcy court granted on November 6, 2019.

Debtor moved to amend or alter the bankruptcy court's
order dismissing the bankruptcy case, asking the court to:

(1) modify its dismissal order by removing language that imposed a permanent bar to discharge of debts and (2) add language to preserve the appeal in the district court. Notably, debtor did not ask the court to vacate or reconsider dismissal of the bankruptcy case. Trustee opposed this motion because debtor failed to raise either argument at the motion to dismiss hearing. The bankruptcy court agreed and denied debtor's motion. Debtor appealed the bankruptcy court's dismissal in district court, an appeal still pending but not currently before us.

Returning to debtor's first appeal in the district court, from the bankruptcy court's March 1 order in the adversary proceeding, trustee filed a motion to dismiss the case as moot. The district court granted the motion on two mootness grounds: (1) debtor could not challenge the order directing him to amend his reorganization plan once he had voluntarily complied with that very order, and (2) the March 1 order depended entirely on the underlying bankruptcy case, which had been dismissed. Alleging both grounds were erroneous, debtor appealed the district court's dismissal of the adversary proceeding.

## II. Discussion

"Whether an appeal [of a bankruptcy court decision to the district court] was properly dismissed as moot is a legal question; thus, our review of the district court's ruling is de novo." *Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935, 937–38 (7th Cir. 2006). "Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *Ciarpaglini v. Norwood*, 817 F.3d 541, 544 (7th Cir. 2016) (citing

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016)). This requirement for jurisdiction remains "throughout the pendency of an action, not just at the time a case is filed." *Bd. of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464, 467 (7th Cir. 1996). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

The district court dismissed as moot debtor's appeal of the March 1 orders because:

> First, while this appeal was pending, [debtor] amended his Plan to comply with the [March 1] Order he seeks to appeal. Secondly, the matter on appeal—the bankruptcy court order requiring [debtor] to amend his Plan—was entirely dependent upon the existence of the bankruptcy case. Because the bankruptcy case has been dismissed, the question of whether [debtor] must file an amended plan is irrelevant.

We address each of these mootness arguments below. In light of our mootness findings, we do not address the merits of the case.

## A. Debtor's Compliance with the Bankruptcy Court's March 1 Order Mooted Debtor's Appeal to the District Court

The district court first found this case moot because debtor complied with the bankruptcy court's March 1 order by filing

an amended reorganization plan. Debtor filed two amended plans in May 2019, the second of which the bankruptcy court confirmed. Given these facts, debtor's only real argument on appeal is that his "compliance was not voluntary" but rather was "coerced" because the district court stated that failure to comply with the March 1 order "may result in the dismissal of this case." Once the bankruptcy court denied his motion for stay without bond, he argues, he had no choice but to file an amended reorganization plan.

That the district court ordered debtor to amend his reorganization plan or risk some negative consequence in litigation (in this case, dismissal) does not automatically render debtor's amended plan coerced. The intuitive appeal of debtor's argument only survives if debtor lacked alternative means to properly present his challenge in court. Yet debtor could have pursued several other avenues to preserve his challenge to the exemption issue undergirding this dispute. Instead, debtor *chose* to comply with the March 1 order—understandably to avoid certain consequences—and thus mooted the instant challenge to that same order.

Debtor could have amended his plan, objected to its confirmation, and appealed as needed. *See* 11 U.S.C. § 1324(a) (providing "[a] party in interest may object to confirmation of the plan" at the confirmation hearing). According to the Supreme Court, plan confirmation and case dismissal are immediately appealable proceedings:

> The relevant proceeding is the process of attempting to arrive at an approved plan that would allow the bankruptcy to move forward. This is so, first and foremost, because only plan

> confirmation—or case dismissal—alters the sta-
> tus quo and fixes the rights and obligations of
> the parties. When the bankruptcy court con-
> firms a plan, its terms become binding on debtor
> and creditor alike. 11 U.S.C. § 1327(a). Confir-
> mation has preclusive effect, foreclosing reliti-
> gation of any issue actually litigated by the par-
> ties and any issue necessarily determined by the
> confirmation order.

*Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (citation and internal quotation marks omitted); *cf. In re Harvey*, 213 F.3d 318, 322 (7th Cir. 2000) ("Forcing parties to raise concerns about the meaning of Chapter 13 filings at the original confirmation proceedings does not impose an unreasonable burden on bankruptcy participants. Quite the contrary—it is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable …."). Yet debtor stood by when the bankruptcy court confirmed his modified plan. Months later, and after debtor failed to make final payments pursuant to that plan, trustee moved to dismiss. Debtor only then moved to amend or alter the bankruptcy court's order, not even challenging the dismissal. His opportunity to object to the modified plan had therefore long passed, "foreclosing relitigation of [the] issue" that debtor and trustee "actually litigated" before the bankruptcy court and that confirmation of the amended plan "necessarily determined." *See Bullard*, 135 S. Ct. at 1692 (citation and internal quotation marks omitted).

Furthermore, to preserve a challenge to the underlying exemption issue in this adversary proceeding, debtor could

have posted the $15,000 supersedeas bond, as ordered, to secure a stay of the bankruptcy proceedings. Debtor instead opted to comply with the March 1 order, submit a modified plan, and forfeit the merits issue he now raises. Alternatively, debtor could have simply refused to comply with the March 1 order altogether—which would have resulted in dismissal of his bankruptcy that he could then appeal. *See id.* (noting case dismissal "alters the status quo and fixes the rights and obligations of the parties"). Debtor pursued none of these available litigation routes and cannot now reverse course.

Debtor cites a non-bankruptcy case in which we held that compliance with a district court's order to pay a portion of the jury costs did not render appeal of that order moot. *See McKinney v. Ind. Mich. Power Co.*, 113 F.3d 770, 772 (7th Cir. 1997). But unlike here, the plaintiff's counsel in *McKinney* "promptly appealed the district court's order" to pay costs; moreover, the check "submitted to the court's clerk noted that the check was in 'payment/deposit of [a] *disputed* sum.'" *Id.* (alteration in original) (emphasis added). While debtor initially pursued a challenge to the exemption issue at a hearing before the bankruptcy court, he failed to maintain that pursuit. Instead he filed an amended plan—a plan the bankruptcy court confirmed without his objection—and allowed the court to dismiss his case, thus mooting his challenge to the very order he now appeals.

**B.** **The Dismissal of Debtor's Underlying Bankruptcy Case Mooted Debtor's Appeal to the District Court**

As a second basis for finding mootness, the district court held that dismissal of debtor's bankruptcy case—upon which the March 1 orders depended—rendered any challenge to the

March 1 orders "irrelevant." Without an underlying bank-
ruptcy case, the argument goes, no reorganization plan re-
mained to enforce.

"An appeal should be dismissed as moot when, by virtue
of an intervening event, a court of appeals cannot grant any
effectual relief whatever in favor of the appellant." *Dorel Juv.
Grp., Inc. v. DiMartinis*, 495 F.3d 500, 503 (7th Cir. 2007) (inter-
nal quotation marks omitted) (quoting *Calderon v. Moore*, 518
U.S. 149, 150 (1996)). We must ask whether the relevant inter-
vening event renders it impossible for us to "'fashion *some*
form of meaningful relief' to the appellant in the event he pre-
vails on the merits." *Flynn v. Sandahl*, 58 F.3d 283, 287 (7th Cir.
1995) (quoting *Church of Scientology v. United States*, 506 U.S.
9, 12 (1993)).

To illuminate this principle in the bankruptcy context, we
turn to *In re Statistical Tabulating Corp.*, 60 F.3d 1286 (7th Cir.
1995), in which we acknowledged the "general rule" that
"[d]ismissal of a bankruptcy proceeding normally results in
dismissal of related proceedings because federal jurisdiction
is premised upon the nexus between the underlying bank-
ruptcy case and the related proceedings," *id.* at 1289.

In that case we held that a bankruptcy court retained ju-
risdiction to decide an issue remanded to it even though it had
already dismissed the underlying Chapter 11 bankruptcy
case. *Id.* at 1287. After filing for bankruptcy, the bankruptcy
court issued an agreed order in a government-initiated adver-
sary proceeding determining that Lasalle (creditor and
lienholder) had priority over the government (creditor) in its
claims to the debtor's assets. *Id.* On Lasalle's motion, the court
liquidated and permitted turnover of the debtors' assets to
satisfy Lasalle's lien. *Id.* When the government "belatedly"

learned of this motion, it appealed to the district court, challenging the turnover as improper because it contravened the terms of the agreed order. *Id.* Lasalle later moved to complete the turnover and to dismiss the case, which the bankruptcy court granted. *Id.* at 1288. Subsequently in the pending appeal, the district court found for the government and remanded to the bankruptcy court to reconsider the agreed order's priority determination. *Id.* at 1288. By that point the bankruptcy court had dismissed the underlying case and determined it lacked jurisdiction to consider the issue on remand, which the district court affirmed. *Id.*

We reversed the district court because "the bankruptcy court should have accepted the mandate of the district court and revisited the agreed order as directed." *Id.* at 1290. "[A]n inferior court has no power or authority to deviate from the mandate issued by the appellate court." *Id.* (alteration in original) (quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)). We held that there are exceptions to the "general rule that when the underlying case is dismissed, all related proceedings are dismissed." *Id.* at 1289. Specifically, we agreed with other courts that "bankruptcy courts have discretion to retain jurisdiction over adversary proceedings." *Id.* The bankruptcy court, in our view, should have exercised that discretion because "the integrity of the appellate process is at serious risk if a bankruptcy court can deprive a district court of jurisdiction over an appeal by simply dismissing the underlying bankruptcy." *Id.*

Our analysis in *Statistical Tabulating* reveals why the district court was within its rights to decline to exercise jurisdiction below. Here, there is no "higher court" (a district court or

court of appeals) that "mandate[d]" the bankruptcy court re-
visit the exemption issue. *See id.* at 1290. Left to its own de-
vices, then, the district court appropriately exercised its dis-
cretion to fall back on the general rule that dismissal of an un-
derlying bankruptcy case results in dismissal of related pro-
ceedings. Were it to exercise jurisdiction it could not "fashion
*some* form of meaningful relief" to debtor, *Flynn*, 58 F.3d at
287 (citation omitted), because any resolution of the propriety
of ordering debtor to amend his plan would not have affected
the now-dismissed bankruptcy case. On this exact point, as
the Fifth Circuit said:

> [T]he pre-discharge dismissal of a bankruptcy
> case returns the parties to the positions they
> were in *before* the case was initiated.… [D]ismis-
> sal of a bankruptcy case restores the *status quo
> ante*.… [S]ince the Bankruptcy Court dismissed
> Debtor's bankruptcy plan without granting a
> discharge, the court's acceptance of that plan
> was negated and the parties were no longer
> bound by its terms.

> Debtor's arguments to the contrary fail to ap-
> preciate the nature of a Chapter 13 plan as an
> exchanged for bargain between the debtor and
> the debtor's creditors[.] As such, when [debtors]
> fail[] to fulfill their … end of the bargain because
> of the dismissal of their case, a resulting finding
> that their confirmed Chapter 13 plan is termi-
> nated serves to prevent [debtors] from obtain-
> ing the benefit of those terms in a plan which [is]
> advantageous to the debtor. Debtor broke his

> agreement … when his failure to make pay-
> ments resulted in the bankruptcy's being dis-
> missed without a discharge. He cannot now
> seek relief under that same agreement and can-
> not convincingly argue that equity is on his side.

*In re Oparaji*, 698 F.3d 231, 238 (5th Cir. 2012) (some alterations in original) (citations and internal quotation marks omitted). Debtor's overdue qualms with his amended plan therefore no longer matter because his bankruptcy case dismissal "re-store[d] the *status quo ante*." *Id.*

Although it is true that debtor appealed the dismissal of the underlying bankruptcy case in a separate appeal to the district court, that court has not yet resolved the appeal. By contrast, in *Statistical Tabulating*, the government secured a favorable judgment on a live issue, which the district court then ordered the bankruptcy court to reconsider post-dismissal. The current facts do not present the same posture that might result in a "serious risk" to the "integrity of the appellate process" because no court has ordered the bankruptcy court to reconsider the merits or reopen the case. *See Stat. Tabulating*, 60 F.3d at 1289. While debtor's separate appeal remains pending, we will not speculate about the counterfactual of the district court ruling in debtor's favor. Therefore, the district court was free to rely on the general rule that a bankruptcy dismissal results in the dismissal of related proceedings. *See, e.g.*, *In re Whaley*, 772 F. App'x 346, 348 (7th Cir. 2019) ("[T]he district court correctly concluded that [debtor's] post-dismissal motion … was moot.").

Debtor attacks this logic by pointing to cases revealing that "it is a fairly routine matter in federal jurisprudence for dismissals of cases to be reviewed and if deemed inappropriate, reviewing courts have the power to reverse or vacate an order dismissing the case." Even accepting his view that "Appellate Courts do have the power to vacate an order dismissing a case," a view debtor roots in out-of-circuit and non-Chapter 13 cases, vacating the order in question is not appropriate here. We therefore affirm the district court's dismissal of this case as moot due to the underlying dismissal of debtor's bankruptcy case.

### III. Conclusion

The district court's determination that debtor's case is moot is legally sound and we AFFIRM that judgment.