**In re CRITICAL CARE SUPPORT SERVICES, Debtor.**

**Critical Care Support Services, Inc., Appellant,**

**v.**

**United States of America, Appellee.**

**No. CV–96–4718(DRH).**

United States District Court, E.D. New York.

Feb. 4, 1999.

Case & Druker by James O. Druker, Garden City, NY, for debtor/appellant.

United States Department of Justice by Karen A. Smith, Alan M. Shapiro, Washington, DC, for appellee.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Debtor/Appellant Critical Care Services, Inc. ("Critical Care") appeals from an August 2, 1996 Order of the United States Bankruptcy Court for the Eastern District of New York (Eisenberg, *B.J.*) which denied Critical Care's motion to reopen its bankruptcy. For the reasons that follow, the Bankruptcy Court's August 2, 1996 Order is affirmed.

## BACKGROUND

Critical Care commenced operations in May 1987 as a supplier of temporary nurses to hospitals. Leonard Haber ("Haber") was the sole shareholder of Critical Care. At its inception, Critical Care treated its nurses as independent contractors and supplied each of them with a form 1099 at the end of the year. Subsequently, the Internal Revenue Service (the "IRS") audited Critical Care and determined that Critical Care had improperly classified the nurses as independent contractors rather than employees during the years 1987 and 1988. Peter Newman, Esq. ("Newman") represented Critical Care during the audit. At the close of the audit, Critical Care agreed to reclassify its nurses as employees; additionally, a $7 million assessment was made against Critical Care for employment taxes attributable to the past mischaracterization of the nurses.

After the audit, Critical Care filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"), with the IRS being its major creditor. Critical Care then moved to have the IRS's claim for past employment taxes expunged on the ground that Critical Care had properly characterized its nurses as independent contractors. After conducting hearings on the matter, with Newman again representing Critical Care,[1] the Bankruptcy Court, on April 8, 1992, determined that Critical Care's nurses were employees, rather than independent contractors, and accordingly denied Critical Care's application to expunge the IRS's claim.

Critical Care did not appeal the Bankruptcy Court's April 8, 1992 Decision, allegedly because Newman advised Haber that "the matter was not appealable," (Critical Care's Br. at 11), and Critical Care's Chapter 11 proceeding was dismissed. After the dismissal, the United States Attorney's Office commenced an investigation into the activities of Haber and Newman during the bankruptcy proceeding. On April 2, 1996, both Haber and Newman plead guilty to charges of conspiracy to defraud the United States and criminal evasion of taxes. The charges

---

1. While Newman, in the capacity of special counsel, argued the motion to expunge the IRS's claim, Richard Stern of Macco, Hackel-ing, Stern & Christensen, Esqs., Critical Care's general counsel, also appeared at the hearings.

against Haber and Newman were largely predicated upon a fraudulent scheme involving Newman and Haber to siphon money from Critical Care to nominee or alter ego corporations controlled by Haber, with said monies inuring to the personal benefit of Haber and Newman. On September 27, 1996, Haber and Newman received sentences of imprisonment of eight months and forty months, respectively.

In the meantime, on May 15, 1996—over four years after the dismissal of its bankruptcy case—Critical Care moved the Bankruptcy Court to reopen the case pursuant to 11 U.S.C. § 350(d) or, alternatively, pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9024. In support of its motion, Critical Care contended, *inter alia*, that (1) Newman, who represented Critical Care during the bankruptcy, had an insurmountable conflict of interest in the bankruptcy proceeding, (2) Newman failed to present certain evidence at the hearings on Critical Care's motion to expunge the IRS's claim and (3) the Bankruptcy Court's April 8, 1992 Decision was wrongly decided on the merits. In a Decision dated July 11, 1996, the Bankruptcy Court denied Critical Care's motion. In accordance with the July 11, 1996 Decision, Critical Care submitted a proposed order, which was signed by the Bankruptcy Court on August 2, 1996. This appeal followed.

## DISCUSSION

### I. The Bankruptcy Court's Refusal to Reopen Under 11 U.S.C. § 350(b)

■ 11 U.S.C. § 350(b) provides in pertinent part that "[a] case may be reopened ... to administer assets, to accord relief to the debtor, or for other cause." While the Code does not define "other cause," "the decision to reopen or not is discretionary with the court, which may consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." *Batstone v. Emmerling (In re Emmer-*

*ling),* 223 B.R. 860, 864 (2d Cir. BAP 1997) (citation and internal quotation marks omitted). Accordingly, the Bankruptcy Court's refusal to reopen Critical Care's case will not be upset absent an abuse of discretion. *See, e.g., Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir.1997); *Nintendo Co. v. Patten (In re Alpex Computer Corp.),* 71 F.3d 353, 356 (10th Cir. 1995); *In re Bianucci,* 4 F.3d 526, 528 (7th Cir.1993).

■ While the Bankruptcy Court acknowledged that "courts have taken a liberal approach to reopening cases" under Section 350(b), (Decision at 4), it further noted that " 'fraud or intentional design' on the part of the movant" justifies denial of a motion to reopen. (*Id.* (quoting *In re Shondel,* 950 F.2d 1301, 1304 (7th Cir. 1991)).) Noting that "the record is replete with the Debtor's fraud upon the Court," (Decision at 4), an observation fully supported by the guilty pleas of Haber and Newman, the Bankruptcy Court's denial of Critical Care's motion to reopen under Section 350(b) was not an abuse of discretion.

■ Alternatively, the Bankruptcy Court correctly held that, inasmuch as Critical Care's motion to "reopen" was in reality a motion to set aside the Bankruptcy Court's August 2, 1996 Order, the motion was properly analyzed under Bankruptcy Rule 9024, which makes Rule 60(b) applicable to bankruptcy cases. *See In re Barnes,* 969 F.2d 526, 527 (7th Cir.1992) ("The usual motion to reopen a proceeding in which the judgment has become final is a collateral attack on the judgment and is therefore subject, in bankruptcy as in other federal cases, to the strict limitations of Rule 60(b) of the Federal Rules of Civil Procedure."); *In re Spanish Cay Co.,* 161 B.R. 715, 718 (Bankr.S.D.Fla.1993). In point of fact, because Critical Care's bankruptcy petition was dismissed, as opposed to "closed" within the meaning of 11 U.S.C. § 350(a), Section 350(b) was not

even implicated. As explained by the Ninth Circuit Court of Appeals:

[A] bankruptcy is normally closed after the bankruptcy proceedings are completed. At that time the debts of the bankrupt are usually discharged and the proceeds of debtor's nonexempt assets divided among creditors. A bankruptcy is reopened under 11 U.S.C. § 350(b), not to restore the prebankruptcy status [which is what happens after an order of dismissal], but to continue the bankruptcy proceeding. The word "reopened" used in Section 350(b) obviously relates to the word "closed" used in the same section. In our opinion a case cannot be reopened unless it has been closed. An order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and thus is not an order closing.

*Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Property Builders, Inc.)*, 699 F.2d 963, 965 (9th Cir.1982) (per curiam); *accord France v. Lewis & Coulter, Inc. (In re Lewis & Coulter, Inc.)*, 159 B.R. 188, 191 (Bankr.W.D.Pa.1993) ("Only a bankruptcy case which has been closed pursuant to 11 U.S.C. § 350(a)—*i.e.*, in which the estate has been fully administered and any trustee appointed has been discharged—may be 'reopened' pursuant to 11 U.S.C. § 350(b)."); *In re Woodhaven, Ltd.*, 139 B.R. 745, 748 (Bankr. N.D.Ala.1992); *In re Gruetzmacher*, 145 B.R. 270, 272 (Bankr.W.D.Wis.1991); *In re Garcia*, 115 B.R. 169, 170 (Bankr.N.D.Ind. 1990).[2]

The Court having determined that the Bankruptcy Court did not abuse its discretion in denying Critical Care's motion to reopen under 11 U.S.C. § 350(b), it now turns to whether the Bankruptcy Court properly denied Critical Care relief under Bankruptcy Rule 9024.

## II. Bankruptcy Rule 9024

■ Bankruptcy Rule 9024 makes Federal Rule of Civil Procedure ("Rule") 60 applicable to bankruptcy cases.[3] Rule 60(b) provides that a court may relieve a party from a judgment on the following grounds:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence;

(3) fraud, misrepresentation or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged, a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief.

Rule 60(b) "strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986). It "may not be used as a substitute for a timely appeal .... [and] it is invoked only upon a showing of exceptional circumstances." *Id.* The decision whether to grant a party relief under Rule 60(b) lies within the sound discretion of the bankruptcy court, and will be reversed on appeal only if that discretion is abused. *Bra-*

---

**2.** The case of *In re Statistical Tabulating Corp.*, 60 F.3d 1286 (7th Cir.1995), cited by Critical Care, is distinguishable. There, the Seventh Circuit specifically contrasted the cases of *In re Income Property Builders*, *In re Woodhaven, Ltd.* and *In re Garcia*, noting that "in the instant case, a live controversy [namely, a pending appeal] still existed between two creditors when the bankruptcy court dismissed the underlying bankruptcy. The dismissal did not fully resolve or otherwise moot the issue on appeal." 60 F.3d at 1290.

**3.** While Bankruptcy Rule 9024 further provides that "a motion to reopen a case under the Code or for reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b)," that provision is clearly inapplicable, as the Bankruptcy Court's August 2, 1996 Order was entered after a contest between Critical Care and the Government.

*num v. Clark*, 927 F.2d 698, 704 (2d Cir. 1991). Moreover, the Bankruptcy Court's denial of Critical Care's Rule 60(b) motion "brings before [the Court] only the denial of the motion, not the merits of the underlying judgment." *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir.1986).

■ Critical Care argues that Newman, its counsel, "first failed to present evidence to [the Bankruptcy Court] properly, following which he gave [Critical Care] disastrously bad advice based upon his insurmountable conflict of interest." (Critical Care's Br. at 21.) According to Critical Care, the "extraordinary fault" of its attorney entitles it to relief under Rule 60(b)(6). It is well-settled, however, that Rule 60(b)(6) may only be invoked when the asserted grounds for relief are "not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). While Critical Care asserts that its motion to set aside the Bankruptcy Court's judgment did not fall within any of the categories enumerated in clauses (b)(1) through (b)(5), the Second Circuit has stated that "[r]elief from counsel's error is normally sought pursuant to 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect." *Nemaizer*, 793 F.2d at 62; *see Gonzalez v. Gannett Satellite Information Network, Inc.*, 903 F.Supp. 329, 332 (N.D.N.Y.1995) (analyzing motion to set aside judgment for alleged inadequate representation under Rule 60(b)(1)), *aff'd*, 101 F.3d 109 (2d Cir. 1996) (unpublished table decision). Because Critical Care's motion was predicated upon its attorney's alleged ineffective assistance of counsel,[4] Rule 60(b)(1) is applicable. As motions under Rule 60(b)(1) must be made within one year of the judg-

ment being attacked, Critical Care's motion was untimely.

■ Assuming, *arguendo*, that Critical Care could invoke Rule 60(b)(6), the Court concludes that the Bankruptcy Court did not abuse its discretion in denying Critical Care relief under that clause. In support of its motion to set aside the Bankruptcy Court's determination that its nurses were employees, Critical Care submitted the affidavit of Marina Haber ("Ms. Haber"), an employee of Critical Care and Haber's wife. In her affidavit, Ms. Haber, while conceding that Newman "properly presented" certain factors relevant to the question whether Critical Care's nurses were employees or independent contractors, contends that Newman nevertheless failed to address certain other factors relevant to that inquiry. According to Ms. Haber, "had the proper evidence been presented, the outcome would have been different." (Marina Haber Aff. ¶ 17.) As regards Critical Care's failure to appeal the Bankruptcy Court's determination, Ms. Haber maintains that at the time Critical Care consented to a dismissal of the case

> none of the principals of [Critical Care] knew that an appeal was available to [Critical Care]. We were told by Mr. Newman that the determination was final and not appealable. Had we known it was appealable, we would most definitely have appealed.

(*Id.* ¶ 18.) Finally, Ms. Haber addressed Newman's alleged conflict of interest:

> I now realize that Mr. Newman had a conflict of interest which prevented him from giving [Critical Care] the proper advice. He had to make sure that cash kept flowing into the business, rather than to the Government, because of the amounts which he was being paid.

(*Id.* ¶ 20.)

■ It is well-established that the catch-all provision of Rule 60(b)(6) should

---

4. The Court notes in this regard that Newman's alleged "insurmountable" conflict of interest comes under the rubric of ineffective assistance of counsel. *Cf. United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994) ("The right to counsel under the Sixth Amendment entails 'a correlative right to representation that is free from conflicts of interest.'" (quoting *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981))).

be applied only in "extraordinary circumstances." *Liljeberg*, 486 U.S. at 864, 108 S.Ct. 2194. Preliminarily, the Court concludes that Critical Care's request for relief under Rule 60(b)(6) was untimely. Although no specific time limit is prescribed for motions pursuant to Rule 60(b)(6), such motions must nevertheless be made "within a reasonable time." "In considering whether a Rule 60(b)(6) motion is timely, [the Court] must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir.1983). Here, Critical Care was aware of Newman's alleged errors in presenting Critical Care's case on April 8, 1992, at the latest, when the Bankruptcy Court denied its application to expunge the IRS claim. Moreover, Critical Care was aware of the grounds for Newman's alleged conflict of interest, namely, his joint participation with Haber in the fraudulent scheme to siphon money from Critical Care, while the bankruptcy proceeding was pending. *See Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir.1994) (holding issue of disqualification must be raised "at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification"). Notably, while Critical Care avers that Richard Stern, its general counsel who attended the hearings before the Bankruptcy Court, had no input in the decision not to appeal, it does not explain why Mr. Stern was not consulted on the matter, particularly in light of Critical Care's actual knowledge of Newman's alleged conflict of interest. Under these circumstances, Ms. Haber's vague and conclusory assertion that she "now realize[s]" that Newman had a conflict of interest is insufficient to overcome the ·Court's conclusion that Critical Care's motion to set aside the Bankruptcy Court's determination, made more than four years after that determination, was untimely.

■ Even were the motion not untimely, the Bankruptcy Court did not abuse its discretion in denying Critical Care's Rule 60(b)(6) motion on the merits. Relief from a judgment under Rule 60(b)(6) for ineffective assistance of counsel would open the floodgates to such motions, and the Second Circuit has "consistently indicated a reluctance to ... accept the proposition that when counsel's conduct shows gross negligence relief to a client may be afforded under Rule 60(b)(6)." *Nemaizer*, 793 F.2d at 63; *see also United States v. 7108 West Grand Avenue*, 15 F.3d 632, 633 (7th Cir. 1994) ("Malpractice, gross or otherwise, may be a good reason to recover from a lawyer but does not justify prolonging litigation against the original adversary."). The two cases cited by Critical Care in support of its position are inapposite. In *United States v. Cirami*, 563 F.2d 26 (2d Cir.1977), the court reversed a denial of a motion under Rule 60(b)(6). There, the moving parties sought to vacate a judgment granted against them after their attorney failed to oppose the Government's motion for summary judgment. Rather than reversing the denial on the ground of attorney neglect, the Second Circuit analogized the case to a previous decision granting Rule 60(b)(6) relief on the ground of an attorney's "complete disappearance":

> In the present case we have the unique fact of what we may term "constructive disappearance" of defendants' attorney, who was allegedly suffering from a psychological disorder which led him to neglect almost completely his clients' business while at the same time assuring them that he was attending to it, and who made himself unavailable even to the trial judge.
>
> ... [The attorney's] behavior was not the result of his having taken on too many cases to give proper attention to this one but instead was engendered by a mental illness which manifested itself to his clients only after they had relied on him for months.

*Cirami*, 563 F.2d at 34–35 (citations omitted). In *P.T. Busana Idaman Nurani v. GHR Indus. Trading Corp.*, 151 F.R.D. 32,

34 (S.D.N.Y.1993), the court noted that "[i]n this Circuit, an attorney's gross negligence is not a basis for relief under Rule 60(b)(6)." As in *Cirami*, the court's decision to vacate a judgment was predicated upon an attorney's mental illness:

> Comparing the vast difference between [the attorney's] pre- and post-illness representation of plaintiff, in conjunction with the relevant affidavits submitted concerning her illness, it is clear that [the attorney's] medical condition compromised her ability to represent her client and caused her not to respond to this Court's notice....

*GHR Indus. Trading Corp.*, 151 F.R.D. at 35.

Unlike the movants in *Cirami* and *GHR Indus. Trading Corp.*, Critical Care cannot demonstrate "extraordinary circumstances" above and beyond its assertion of Newman's ineffective assistance of counsel (predicated upon his alleged failure to adduce certain evidence, his alleged erroneous advice regarding Critical Care's right to appeal and his alleged conflict of interest).

Critical Care also refers to the *"per se"* rule of disqualification, under which a criminal defendant need not prove that an actual conflict adversely affected his or her lawyer's performance in order to establish a Sixth Amendment violation. *United States v. Fulton*, 5 F.3d 605, 611 (2d Cir. 1993). The *"per se"* rule "applies when an attorney is implicated in the crimes of his or her client since, in that event, the attorney cannot be free from fear that a 'vigorous defense should lead the prosecutor or the trial judge to discover' evidence of the attorney's 'own wrongdoing.'" *Fulton*, 5 F.3d at 611 (quoting *Bellamy v. Cogdell*, 974 F.2d 302, 307 (2d Cir.1992) (en banc)) (citation and internal quotations omitted). As conceded by Critical Care, however, the Sixth Amendment right to effective assistance of counsel does not apply in civil proceedings. *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir.1981). Therefore, the "per se" disqualification

rule addressed by the Second Circuit in *Fulton* is inapplicable.

In any event, even assuming, *arguendo*, that the *per se* disqualification rule, or a variant thereof, should be adapted to the civil context, the Bankruptcy Court aptly noted that Critical Care had failed to demonstrate how the interests of Newman and Critical Care were adverse. As observed in *Fulton*, in a criminal case where an attorney defending a client participated in his client's crimes, there is a clear danger that the attorney will be more restrained in defending the client for fear that a vigorous defense will implicate himself. Here, however, Newman was not representing Haber on the criminal charges to which both ultimately plead guilty. Rather, he was representing Critical Care (of which Haber was the sole shareholder) in proceedings to determine whether Critical Care's nurses were employees or independent contractors.

Nowhere in its papers does Critical Care causally connect either (1) Newman's alleged failure to present certain evidence on Critical Care's behalf or (2) Newman's alleged representation to Critical Care that the Bankruptcy Court's determination on the nurse question was not appealable to his participation with Haber in the fraudulent scheme to siphon money from Critical Care. For example, as to the former, Critical Care contends that Newman failed to present, *inter alia*, the following evidence: the nurses could not provide their own replacements; the nurses set their own hours of employment; the nurses were paid by the shift; the order of the nurses' tasks was not set by Critical Care; the nurses were not provided any benefits by Critical care; and the nurses did not work on Critical Care's premises. Yet, Critical Care fails to elucidate how Newman's participation in the fraudulent scheme could have motivated him to suppress this evidence and, more specifically, how inquiry into these areas could somehow have led to discovery of that scheme. To the contrary, in light of Ms. Haber's averment

that Newman "had to make sure that cash kept flowing into [Critical Care]," for both himself and Haber, the Bankruptcy Court properly concluded that Critical Care, Haber and Newman all had a common interest—to convince the Bankruptcy Court to expunge the IRS's claim, resulting in the prolongation of Critical Care's existence, the continued flow of money into Critical Care (and Newman) and a successful reorganization. In a similar vein, the Bankruptcy Court observed that "[i]f one were to proceed under Ms. Haber's logic, Mr. Newman's interests would have been furthered by an appeal because it would have provided him with additional legal fees and a continued source of other benefits from [Critical Care] while the appeal was pending." (Decision at 11.) [5]

Because Newman and Critical Care had a common interest in having the IRS claim expunged, and because Critical Care does not demonstrate how Newman's alleged incompetence was motivated by his participation in the fraudulent scheme, the Bankruptcy Court properly concluded that no conflict of interest was presented.

 Finally, the Court agrees with the Bankruptcy Court that in the event a conflict of interest did exist, that conflict did not constitute an "extraordinary circumstance" justifying relief under Rule 60(b)(6). In this regard, the Court notes that Rule 60(b) is largely a creature of equity. It is undisputed that at the same time Critical Care was arguing for the expungement of the IRS's claim for employment taxes, Haber—its sole shareholder—was scheming with Newman to fraudulently siphon funds from Critical Care for their own personal benefit to prevent the funds from ending up in the hands of the Government. For Critical Care to now use the misconduct of its attorney—misconduct in which its sole shareholder participated and of which he approved—as a means of seeking equitable relief under

Rule 60(b) strikes the Court as particularly offensive.

### CONCLUSION

For the reasons set forth above, the Bankruptcy Court's August 2, 1996 Order is **AFFIRMED.**

**IT IS SO ORDERED.**

---

5. To the extent Critical Care reasoned before the Bankruptcy Court that Newman wished to avoid an appeal to avoid scrutiny of Critical

Care's books, the Court notes that the very same evidence before the Bankruptcy Court would have been before the appellate court.