**In re David COLETTA, Debtor(s).**

**No. 07–10285ELF.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 17, 2007.

David A. Scholl, for Debtor.

Jeffrey M. Cooper, for Nicholas Mattera.

## MEMORANDUM OPINION

ERIC L. FRANK, Bankruptcy Judge.

### I.  INTRODUCTION

Presently before me is the motion of Nicholas Mattera ("the Movant") to Reopen Closed Case and Annul Automatic Stay ("the Motion").

During the pendency of this chapter 11 bankruptcy case filed by David Coletta ("the Debtor"), the Movant entered default judgment against him in a state court mortgage foreclosure action. Three (3) months after the dismissal of the Chapter 11 case for failure to file bankruptcy schedules and required statements, the Movant commenced execution proceedings on that judgment. The Movant's efforts to sell the Debtor's real property then were further delayed when the Debtor filed another bankruptcy case, this time under chapter 13. The Movant obtained relief from the automatic stay just before the short-lived chapter 13 case was dismissed by the court, again for failure to file bankruptcy schedules and required statements. Eight (8) months after the entry of the judgment, the Movant caused the Debtor's real property to be sold at a sheriff's sale.

The Debtor has filed a motion in state court requesting that the foreclosure judgment be stricken and the sheriff's sale set aside on the ground that the foreclosure judgment was void, having been entered in violation of the automatic stay. The Movant contends that the Debtor failed to provide him with notice of the filing of the Chapter 11 case and that his violation of the automatic stay was, therefore, unwitting. Presumably to undermine the legal premise of the Debtor's state court motion, the Movant filed the Motion in this court, requesting annulment of the automatic stay.

The Motion was filed on October 29, 2007. The Debtor filed a response to the Motion on November 6, 2007. An evidentiary hearing on the Motion was held and concluded on November 21, 2007.

Based on the Findings of Fact and Conclusions of Law set forth below, I will grant, in substance, the relief requested by the Movant. Since, in a technical sense, it is unnecessary to "reopen" this case, I will vacate the dismissal order and reinstate this chapter 11 case for the purpose of considering the Motion. On the merits, I will exercise my discretion to annul the automatic stay as of January 16, 2007, the date the Debtor commenced this case. The case will then be dismissed again.

## II. *FINDINGS OF FACT*

### *The Subject Real Estate and State Court Proceedings*

1. The Debtor owns real property located at 6201 Grays Avenue Philadelphia, PA 19142 and 6241–43 Dicks Avenue, Philadelphia, PA 19142 (collectively, "the Subject Properties").[1] *See* Motion ¶ 2.[2]

2. On June 21, 2005, to secure repayment of a note in the principal amount of $60,000, the Debtor granted the Movant a mortgage against the Subject Properties. *See id.* ¶¶ 3–4 & Exhibit "A" thereto.

3. On June 20, 2006, the Movant filed a mortgage foreclosure complaint against the Debtor in the Court of Common Pleas, Philadelphia County, docketed at No. 2037, June Term 2006 ("the State Court Action"). *See* Motion ¶ 5; Docket in the State Court Action.[3]

4. Stuart Eisenberg, Esquire ("Mr. Eisenberg"), an attorney with McCullough & Eisenberg, P.C., represented the Debtor in the State Court Action. *See id.*[4]

5. On October 16, 2006, the Debtor filed an answer to the complaint on October 16, 2006. *See* Docket in the State Court Action.

6. On January 8, 2007, the state court entered an Order striking the Debtor's answer to the complaint for lack of conformity with the requirements of Pa. R. Civ. P. 1024. The Order granted the Debtor twenty (20) days in which file an answer to the complaint in conformity with the rules of court. The Order further provided that "failure to so file will result in this court entering upon praecipe of plaintiff a default judgment in favor of plaintiff." *See id.*

### *The Chapter 11 Bankruptcy Case*

7. On January 16, 2007, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in this court, thereby commencing the Chapter 11 Case (Docket No. 07–10285). *See* Chapter 11 Case Docket Entry No. 1.[5]

---

1. The Debtor testified that the Subject Properties are two (2) of more than fifty (50) pieces of real property that he owns.

2. In this Memorandum, all citations to the Motion are to allegations that the Debtor admitted in his response to the Motion.

3. A bankruptcy court may take judicial notice of the matters of record in the state courts within its jurisdiction. *E.g., In re Soto,* 221 B.R. 343, 347 (Bankr.E.D.Pa.1998).

4. One year later, on October 15, 2007, David A. Scholl, Esquire entered his appearance on behalf of the Debtor in the State Court Action.

5. A bankruptcy court may take judicial notice of the dockets and the content of the documents filed in the bankruptcy case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. *See* Fed.R.Evid. 201; *In re Scholl,* 1998 WL 546607, at *1 n. 1 (Bankr.E.D.Pa. Aug.26, 1998); *see also In re Indian Palms Assocs., Ltd.,* 61 F.3d 197, 205 (3d Cir.1995).

8. Mr. Eisenberg represented the Debtor in the Chapter 11 Case.[6]

9. Despite requesting and receiving an extension of time, the Debtor failed to file any of the bankruptcy schedules or statements that were required to be filed after the filing of the "bare" voluntary petition. This inaction resulted in the dismissal of the Chapter 11 Case by Order entered February 22, 2007. *See* Chapter 11 Case Docket Entry Nos. 7, 12, 16.

### Proceedings in State Court After the Filing of the Chapter 11 Case

10. On February 15, 2007, thirty-eight (38) days after the entry of the January 8, 2007 Order in the State Court Action (which gave the Debtor twenty (20) days to file an amended answer), and while the Chapter 11 Case was still pending, the Movant filed a praecipe entering judgment by default and assessing damages in the amount of $62,577.43. *See* Docket in State Court Action.

11. Shortly after February 15, 2007, the Debtor's counsel, Mr. Eisenberg, received written notice of the entry of the judgment in the State Court Action.[7]

12. On May 9, 2007, after the dismissal of the Chapter 11 Case, the Movant filed a writ of execution in the State Court Action, which resulted in the Subject Properties being scheduled for a sheriff's sale on August 7, 2007. *See* Motion ¶¶ 14–15; Docket in State Court Action.

### The Chapter 13 Case

13. On August 6, 2007, the day before the scheduled sheriff's sale, the Debtor filed his second bankruptcy case of the calendar year. This case was filed under chapter 13 and docketed at Bky. No. 07–14551 ("the Chapter 13 Case").

14. Mr. Eisenberg represented the Debtor in the Chapter 13 Case.[8]

15. As a result of the filing of the Chapter 13 Case, the sheriff's sale scheduled for August 7, 2007 was postponed to October 2, 2007. *See* Motion ¶¶ 15, 19.[9]

16. Two motions were filed in the Chapter 13 Case that are pertinent to the current Motion:

A. On August 9, 2007, the Movant filed a motion for relief from the automatic stay ("the Chapter 13 § 362 Motion"), to which the Debtor filed a response on August 13,

---

**6.** The dockets reflect that counsel of record was Carol B. McCullough, who is an attorney in Mr. Eisenberg's firm, McCullough & Eisenberg, P.C. During his testimony at the hearing on the Motion, Mr. Eisenberg referred to the Debtor as his "client."

**7.** The docket in the State Court Action reflects "notice under Rule 236." Pa. R. Civ. P. 236(a) provides:

The prothonotary shall immediately give written notice of the entry of . . .
(2) *any . . . order or judgment to each party's attorney of record* or, if unrepresented, to each party. The notice shall include a copy of the order or judgment.
(emphasis added).

**8.** As in the Chapter 11 Case, the docket reflects that counsel of record was Carol B.

McCullough, of McCullough & Eisenberg, P.C. In the Chapter 13 case, Mr. Eisenberg's name appeared on the signature line with Ms. McCullough on filings the McCullough & Eisenberg, P.C. firm made on the Debtor's behalf. *See, e.g.,* Chapter 13 Docket Entry 12.

**9.** I infer that, after receiving notice of the filing of the Chapter 13 Case, the Movant "postponed" the sheriff's sale to October 2, 2007, rather than canceling it, in the hope or expectation that the automatic stay would be lifted prior to that date, thereby permitting the sale to go forward. *See generally Taylor v. Slick,* 178 F.3d 698, 701 (3d Cir.1999), *cert. denied,* 528 U.S. 1079, 120 S.Ct. 797, 145 L.Ed.2d 672 (2000) (postponement of a sheriff's sale in accordance with state law procedures during the pendency of an automatic stay does not violate § 362(a)(1)).

2007. *See* Chapter 13 Docket Entry Nos. 8, 12;

B. On August 13, 2007, the Debtor filed a Motion to Extend the Automatic Stay under 11 U.S.C. § 362(c)(3) ("the Debtor's Motion to Extend"), to which the Movant filed a response on August 20, 2007.[10] *See* Chapter 13 Docket Entry Nos. 13, 17.

17. In the Debtor's Motion to Extend, the Debtor disclosed that the Chapter 11 Case was filed on January 16, 2007 and dismissed on March 9, 2007.[11] *See* Debtor's Motion to Extend (third unnumbered paragraph).

18. On September 6, 2007, the Debtor withdrew the Debtor's Motion to Extend.

19. On September 10, 2007, it was reported to the court that the Debtor had withdrawn his response to the Chapter 13 § 362 Motion.

20. The Chapter 13 § 362 Motion was granted by Order dated September 10, 2007 ("the § 362 Order"). The § 362 Order explicitly authorized the Movant to schedule a sheriff's sale of the Subject Properties. *See* Chapter 13 Case Docket Entry No. 25.

21. In the Chapter 13 Case, despite requesting and receiving an extension of time, the Debtor did not file the bankruptcy schedules or statements that are required to be filed after the filing of the "bare" voluntary petition. This inaction resulted in the dismissal of the Chapter 13

Case by Order entered September 11, 2007, the day after the entry of the § 362 Order. *See* Chapter 13 Case Docket Entry Nos. 18, 21, 26.

***Proceedings in State Court After the Filing of the Chapter 13 Case***

22. On October 2, 2007, the Movant caused the Subject Properties to be sold at a sheriff's sale. *See* Motion ¶ 19.

23. The Subject Properties were sold to the Movant.[12]

24. On October 15, 2007, the Debtor filed a Petition to Strike Judgment and Set Aside Sheriff's Sale in the State Court Action ("the Petition to Strike"), asserting that: (a) the entry of the judgment violated the automatic stay in the Chapter 11 Case, thereby rendering it void; and (b) that all subsequent execution proceedings on the judgment were also invalid. *See* Motion ¶ 20.

***The Motion***

25. On October 29, 2007, the Movant filed the Motion in the Chapter 11 Case, requesting that this court:

   a.  reopen the bankruptcy case;

   b.  annul the automatic stay retroactive to January 16, 2007 (the date the Chapter 11 Case was filed); and

   c.  "validate" the October 2, 2007 sheriff's sale of the Subject Properties.

***The Movant's Knowledge of the Chapter 11 Case***

26. Neither the Debtor nor his counsel gave timely notice to the Movant of the filing of the Chapter 11 Case.[13]

---

**10.** Section 362(c)(3)(A) provides that, in most circumstances, the automatic stay expires with respect to an individual debtor on the thirtieth (30th) day after the debtor files a bankruptcy case under chapter 7, 11 or 13, if a prior case of the debtor was pending and was dismissed within the preceding one (1) year period. Section 362(c)(3)(B) provides a procedure for the court to extend the automatic stay beyond the initial thirty (30) day period on motion of the debtor.

**11.** The Debtor misstated the date of dismissal of the Chapter 11 Case. *See* Finding of Fact No. 9. This error is not material for purposes of deciding the pending Motion.

**12.** The notes of testimony of the November 6, 2007 hearing on the Motion were not transcribed. This finding of fact is based on my recollection of the testimony of Jeffrey M. Cooper.

27. During the pendency of the Chapter 11 Case, the Movant lacked actual knowledge of the case.

28. Between August 13, 2007 and August 20, 2007, the Movant received actual notice of the filing (and subsequent dismissal) of the Chapter 11 Case. *Compare* Finding of Fact No. 16.B *with id.* No. 17.

### III. *CONCLUSIONS OF LAW*

■ 1. The Motion to Reopen is more appropriately treated as a motion under Fed. R. Bankr.P. 9024 for relief from the Order dismissing the Chapter 11 Case so as to vacate the dismissal and permit consideration of the Motion to Annul the Automatic Stay.[14]

■ 2. Pursuant to Fed. R. Bankr.P. 9024, incorporating Fed.R.Civ.P. 60(b)(6),[15] it is appropriate to revisit the Order dismissing the Chapter 11 Case to permit the

---

13. The findings in Findings of Fact Nos. 26–27 were hotly contested by the Debtor at the hearing. I further explain my reasons for making these findings in Part IV.A. below.

14. *See, e.g., In re Walker,* Bky. No. 03–33446F, slip op. at 9–12 (Bankr.E.D.Pa. May 31, 2005) (published at *www.paeb.uscourts.gov* / link to Published Opinions) (citing numerous authorities for the propositions that: (1) generally, bankruptcy courts have no jurisdiction to consider the merits of disputes raised in proceedings filed after a case has been closed unless the case is reopened; (2) although, the "dismissal" of a case is legally distinct from the concept of the "closing" of a case under 11 U.S.C. § 350, the principle that the court lacks jurisdiction over post-closing proceedings also applies to cases that have been dismissed; and (3) a bankruptcy court can "revisit" the terms of a dismissal order pursuant to Fed. R. Bankr.P. 9024).

In *Walker,* the court assumed *arguendo* that a motion to annul the automatic stay could be treated as a Rule 9024 motion to modify a dismissal order. *See Walker,* slip op. at 11 (citing *In re Critical Care,* 236 B.R. 137, 140 (E.D.N.Y.1999); *In re Flores,* 2001 WL 543677, at *3 (10th Cir. BAP May 23, 2001)) (unpublished opinion); *In re Lewis & Coulter, Inc.,* 159 B.R. 188, 189 (Bankr.W.D.Pa.1993). The *Walker* court ultimately denied the motion because the motion was not filed in a timely manner. *See* Fed.R.Civ.P. 60(b) (requiring Rule 60(b) motion to be filed "within a reasonable time" and, in certain instances, not more than one (1) year after the entry of the order at issue). In this case, I am satisfied that the Motion was filed within a reasonable time.

15. Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment". *See Bryant v. Gates Const. Corp.,* 1991 WL 261767, *2 (D.Del. June 26,1991) (citations omitted):

> Under Rule 60(b), a ... court may grant relief from an otherwise final judgment for any of five enumerated reasons or for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Subsection (6) ... "confers broad discretion on the trial court to grant relief when 'appropriate to accomplish justice.'" A determination of a motion based upon Rule 60(b)(6) is a matter for the court's discretion.
>
> Rule 60(b) "does not confer upon the district courts a 'standardless residual of discretionary power to set aside judgment.'" The remedy provided by Rule 60(b) is "extraordinary, and special circumstances must justify granting relief under it."
>
> The Third Circuit Court of Appeals has instructed that Rule 60(b)(6) "must be applied '[s]ubject to the propositions that the finality of judgments is a sound principle that should not lightly be cast aside, [and] that clause (6) is not a substitute for appeal....' It is intended to be a means for accomplishing justice in extraordinary situations, and so confined, does not violate the principle of the finality of judgments."

court to consider the merits of the Movant's request for annulment of the automatic stay.[16]

3. The Movant inadvertently violated the automatic stay, 11 U.S.C. § 362(a), by entering a default judgment against the Debtor in the State Court Action on February 15, 2007.

■ 4. "[A]ctions in violation of the stay, although void (as opposed to voidable), may be revitalized in appropriate circumstances by retroactive annulment of the stay." *E.g., In re Myers*, 491 F.3d 120, 127 (3d Cir.2007) (citing *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994)).

■ 5. The decision whether to annul the automatic stay is committed to the discretion of the bankruptcy court, *see, e.g., In re Porter*, 371 B.R. 739, 744–45 (Bankr.E.D.Pa.2007), and requires a "weighing of the equities, since the remedy is equitable in nature," *In re Wilkerson*, 2004 WL 2977564, at *3 (Bankr.E.D.Pa. Dec.8, 2004)

■ 6. The stay should be annulled only in exceptional circumstances. *E.g., In re Miller*, 1998 WL 151427, at *5 (Bankr. E.D.Pa. Mar.23, 1998); *see also In re Soares*, 107 F.3d 969, 977 (1st Cir.1997).[17] *But see In re Fjeldsted*, 293 B.R. 12, 21–24 (B.A.P. 9th Cir.2003) (rejecting the "exceptional circumstances" standard for annulment of the stay in favor of "balancing of the equities" standard).

■ 7. In determining whether the automatic stay should be annulled, the court may consider various relevant factors, including:

- if the creditor acted without knowledge of the debtor's bankruptcy filing;
- if the debtor is guilty of some inequitable conduct; [18]

16. I conclude that the Movant's lack of notice of the Chapter 11 Case constitutes grounds for granting relief from the Order that dismissed the Chapter 11 Case—at least for the purpose of providing the Movant with the opportunity to present the merits of his claim that the automatic stay should be annulled. *See* 12 *Moore's Federal Practice 3d* ¶ 60.48[3][b], at 60–171 to 172 (2007) (stating as general principle, "[t]here should be relief from judgments that were taken without any real knowledge of the proceedings by the movant"); *National Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 266 (4th Cir.1993); *see generally Klapprott v. United States*, 335 U.S. 601, 613–14, 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (party established existence of extraordinary circumstances where he was prevented from making a timely appeal of judgment for four years because of incarceration, ill health and other factors beyond his reasonable control).

Strictly speaking, this Conclusion of Law No. 2 may not be a "pure" conclusion of law. Rather, it might be characterized more accurately as a product of the exercise of my discretion. For sake of convenience, I have included it in the "Conclusions of Law" section of this Memorandum.

17. The *Soares* court articulated the rationale for this principle as follows:

Once again, the overarching purpose of the automatic stay informs our analysis. Because the stay is a fundamental protection for all parties affected by the filing of a petition in bankruptcy, it should not be dismantled without good reason. Undoing the stay retroactively should require a measurably greater showing. Congress intended the stay to afford debtors breathing room and to assure creditors of equitable distribution. If retroactive relief becomes commonplace; creditors—anticipating post facto validation—will be tempted to pursue claims against bankrupts heedless of the stay, leaving debtors with no choice but to defend for fear that post-petition default judgments routinely may be resuscitated. 107 F.3d at 977 (citations omitted).

18. Inequitable conduct would include repetitive, bad faith bankruptcy filings. It would also include encouraging a creditor to proceed notwithstanding the stay or lying in wait for the outcome of the creditor's actions, asserting its status as a bankruptcy debtor only after an outcome unsatisfactory to the debtor

- if the creditor has changed its position to its detriment;
- whether the additional expenses necessarily incurred by the creditor who must begin anew with its enforcement remedy outweigh the benefit to anyone;
- whether a motion for relief from stay would likely have been granted before the creditor acted in violation of the stay, had it been filed earlier.

Compare *In re Siciliano*, 167 B.R. 999, 1007–08 (Bankr.E.D.Pa.1994) *with In re Wilkerson*, 2004 WL 2977564, at *3.[19]

## IV. DISCUSSION

### A. The Movant Lacked Knowledge of the Chapter 11 Case Until August 2007

■ After careful consideration of the record, I resolve the primary factual issue in this case in the Movant's favor. I find it more likely than not that neither the Movant nor his counsel received notice of the filing of the Chapter 11 Case in January 2007. Rather, it was not until August 2007, in the context of the Debtor's Motion to Extend in the Chapter 13 Case, that the Movant received notice of the existence of the Chapter 11 Case. Because this was the fact issue on which the parties devoted most of their energy during the hearing, I will explain the basis for my finding below.

### 1.

The Debtor contends that his counsel gave notice of the filing of the Chapter 11 Case to the Movant's counsel shortly after the Chapter 11 Case was filed on January 16, 2007. In support of this contention, the Debtor relies primarily on the testimony of Mr. Eisenberg, who served as the Debtor's counsel in the State Court Action, the Chapter 11 Case and the Chapter 13 Case.[20]

Mr. Eisenberg is an attorney who regularly represents bankruptcy debtors in this court. Mr. Eisenberg testified concerning his customary office policies and procedures for giving notice to creditors upon the filing of a bankruptcy case. Those procedures are:

- when notice is given, it is given on the same day as the bankruptcy filing, as

becomes known. *See, e.g., In re Blaylock*, 301 B.R. 443, 448 (Bankr.E.D.Pa.2003).

19. In *Fjeldsted*, 293 B.R. at 25, the court set out a lengthier list of factors to be considered in a determination whether to annul the stay:
1. the number of filings;
2. whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3. a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4. the Debtor's overall good faith (totality of circumstances test);
5. whether creditors knew of stay but nonetheless took action, thus compounding the problem;
6. whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

7. the relative ease of restoring parties to the status quo ante;
8. the costs of annulment to debtors and creditors;
9. how quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
10. whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. whether annulment of the stay will cause irreparable injury to the debtor;
12. whether stay relief will promote judicial economy or other efficiencies.

20. In opposing the Motion, the Debtor was represented by new counsel in the Chapter 11 Case. The same, new counsel entered his appearance and filed the Petition to Strike in the State Court Action.

soon as his office receives a confirming e-mail from the Clerk of the Bankruptcy Court providing a case number pursuant to the electronic filing procedure employed in this district;

- notice is provided, in most instances, by regular mail or by facsimile transmission; [21]

- when notice is provided in writing, a facsimile cover sheet or a copy of the letter sent by first class mail is retained in the client file;

- his office does not ordinarily notify unsecured creditors whose claims are not in litigation at the time of the bankruptcy filing;

- his office notifies secured creditors whose claims are in litigation;

- his office notifies the sheriff's office if a sheriff's sale of a debtor's property has been scheduled.

Pursuant to his office policies, Mr. Eisenberg does not personally prepare the written communications or provide oral notice of a bankruptcy filing. He has delegated those task to his legal assistant. The legal assistant responsible for the Debtor's file in January 2007 was subsequently terminated from her position. Mr. Eisenberg testified that the termination was caused by her excessive absences and not due to the quality of her work.

In this case, because the State Court Action was pending at the time the Chapter 11 Case was filed, the customary notice procedures described above should have resulted in Mr. Eisenberg's office giving notice to the Movant's counsel shortly after the filing of the Chapter 11 Case. Mr. Eisenberg testified that he has no reason to believe that the usual procedures were not followed in this case. However, he did not produce any written evidence (such as a copy of a facsimile cover sheet or a letter) of the notice he contends was given to the Movant's counsel at or around the time of the filing of the Chapter 11 Case. He explained that he did not review the file he maintained for the Chapter 11 Case before appearing in court on the day of the hearing on the Motion and therefore, did not know if such written evidence exists.

Jeffrey M. Cooper, the Movant's counsel, testified that he did not receive any written notice of the filing of the Chapter 11 Case. He denied that he had any actual knowledge of the Chapter 11 Case until approximately October 15, 2007, when the Debtor filed the Petition to Strike in the State Court Action. However, he acknowledged that another attorney in his office, Barry Rosen, whom he described as "an associate," must have reviewed the Debtor's Motion to Extend (filed in the Chapter 13 Case) in August 2007—which disclosed the filing and dismissal dates of the Chapter 11 Case—because Mr. Rosen prepared and filed a response to the Debtor's Motion to Extend. Therefore, it is indisputable that the Movant, through counsel, was on notice of the filing of the Chapter 11 Case some time between the filing of the Debtor's Motion to Extend on August 13, 2007 and the filing of the Movant's response thereto on August, 20, 2007. *See* Finding of Fact No. 27.[22]

### 2.

There is little or no basis in the record, aside from the testimony described above, to assist me in determining whether the

---

21. For law firms that handle litigation for secured creditors on a regular basis, apparently as a matter of collegiality, Mr. Eisenberg's office will supplement the notice given by facsimile transmission with a telephone call. The Movant's counsel's office was not among those law firms provided with telephone notice.

22. The Movant's primary counsel, Mr. Cooper, must be charged with the knowledge of the Chapter 11 Case exhibited by his associate, Mr. Rosen.

**150**

Debtor provided notice of the Chapter 11 Case to the Movant. Certainly, nothing in the court record states that the Debtor provided such notice.[23] Nor is there anything else in the public record that sheds any further light on the issue.[24] Thus, the central fact issue in this dispute turns on how I resolve the conflicting testimony of Messrs. Eisenberg and Cooper. The testimony of each witness was plausible and I have no reason to doubt the good faith and sincerity of either of them.

I resolve the fact issue in the Movant's favor for two reasons.

First, I consider it is more likely that Mr. Eisenberg's office inadvertently failed to send notice of the bankruptcy filing to Mr. Cooper than that Mr. Cooper received the notice and blatantly ignored the legal obligation to honor the automatic stay. In other words, I consider it more likely that there was a mistake than a conscious wrongdoing.[25]

---

23. In the Chapter 11 Case, the Debtor never filed bankruptcy schedules or a mailing matrix. Consequently, the court could not have provided any notice of the proceedings to the Movant or his counsel. Nor did Mr. Eisenberg file anything else that establishes conclusively that he gave notice to the Movant or his counsel. On January 30, 2007, Mr. Eisenberg filed a Certification with the court stating that the Debtor's Motion for Extension of Time to File Schedules and Statements had been served on "all interested parties" by first class mail. However, the "interested parties" were not identified.

24. The docket in the Chapter 11 Case reveals that that two (2) creditors filed requests for notices with the Clerk. *See* Chapter 11 Case Docket Entry Nos. 5 and 15. The filings by these creditors arguably suggest that Mr. Eisenberg's office provided notice to creditors in the Chapter 11 Case consistent with its office policies. However, the record does not support a finding that these two (2) creditors fit the profile of the creditors that Mr. Eisenberg testified would receive prompt notice of a bankruptcy filing from his office. Therefore, the inference that their actions in this court were precipitated by their receipt of a notice from Mr. Eisenberg is not warranted.

One of creditors is American Express Centurion Bank ("AmEx"), a credit card company, that filed an unsecured claim. AmEx's proof of claim stated, *inter alia,* that it did not hold a judgment against the Debtor. Therefore, Amex is an unsecured creditor to whom Mr. Eisenberg would not ordinarily provide notice. The other creditor is Ford Motor Credit Co. ("FMCC"), a company that usually holds claims secured by motor vehicles and, in fact, filed a proof of claim as a creditor secured by an automobile in the Chapter 11 Case. That proof of claim stated that the Debtor was delinquent on his monthly payments to FMCC when the Chapter 11 Case was filed. FMCC does not fit the category of a secured creditor whose claim in litigation, as described in Mr. Eisenberg's testimony. Thus, it is not clear in the record why Mr. Eisenberg's office would have sent notice to FMCC. It is quite possible that Mr. Eisenberg failed to mention in his testimony that his office regularly gives notice of a bankruptcy filing to secured automobile lenders whose accounts are delinquent to avoid a repossession of the vehicle in violation of the automatic stay. Indeed, I would be surprised if Mr. Eisenberg does not routinely provide such notice as it is difficult to imagine how an attorney could run a bankruptcy practice representing debtors without doing so. In these circumstances, it is likely that Mr. Eisenberg's office policy would call for notice of the bankruptcy filing to be given to FMCC.

In the end, however, I am forced to speculate how AmEx and FMCC learned of the Chapter 11 Case. Without more information, I am unwilling to draw any inferences regarding notice to the Movant from the fact these two (2) creditors were aware of the Chapter 11 Case. Also, of course, even if these creditors received notice from Mr. Eisenberg's office, that would not establish conclusively that notice was provided to the Movant or his counsel.

25. Of course, it is also possible that Mr. Cooper received the notice and acted in violation of the stay unintentionally because he misplaced the notice and later forgot about it. I also consider that less likely than an inadvertent failure by Mr. Eisenberg's office to send the notice.

Second, the Debtor failed to produce evidence within his control that, while not conclusive, would have been probative: *i.e.*, copies of faxes or letters retained in the Debtor's chapter 11 case file in Mr. Eisenberg's office. Those writings, if they exist, documented the notice given to creditors of the existence of the Chapter 11 Case. However, Mr. Eisenberg did not review his file before coming to court to testify. As a result, he was unable to produce the relevant documents or even say whether they exist

The Debtor's failure to produce probative evidence within his control[26] causes me to draw an adverse inference—namely, I infer that the case file lacks the evidence that would corroborate the Debtor's position. *See In re Butts,* 350 B.R. 12, 19 n. 8 (Bankr.E.D.Pa.2006), *aff'd,* 2007 WL 1722805 (E.D.Pa. Jun 13, 2007). The absence of available corroborative evidence that should exist if Mr. Eisenberg's testimony is accurate, undercuts the strength of Mr. Eisenberg's testimony and contributes to my decision to credit Mr. Cooper's testimony.

### B. *The Automatic Stay Will Be Annulled*

■ Having resolved the key fact issue in this dispute, I now turn to the heart of the matter. Is this the "exceptional" case in which it is appropriate to exercise my discretion to annul the automatic stay? I conclude that it is.

■ The starting point in my consideration of the annulment issue is the Movant's lack of knowledge of the Chapter 11 Case when he entered judgment against the Debtor in the State Court Action in

February 2007. Here, this innocent violation of the automatic stay provides the Movant with the initial foundation for making the case for annulment of the stay. Standing alone, the Movant's lack of knowledge of the stay is not necessarily a sufficient basis for annulment. However, in this case, there is more. I find the Debtor chargeable with inequitable conduct. In particular, the Debtor allowed an inordinate period of time to pass before raising the violation of the automatic stay. This weighs heavily in favor of annulment of the stay.

In 2007, the same counsel represented the Debtor in the state court and in the two cases in this court. The Movant took the default judgment in the State Court Action on February 15, 2007. The Debtor has not asserted that he and his attorney did not receive timely notice of the entry of the judgment in the State Court Action, so I must assume that they were aware of the judgment. *See* Finding of Fact No. 11. After learning of the entry of judgment against the Debtor in violation of the stay, at a minimum, one would expect the Debtor's counsel to write a letter to the Movant's counsel putting him on notice of the violation of the stay and requesting that the judgment be vacated. Yet, no evidence was presented that Mr. Eisenberg took such action in response to the Movant's inadvertent violation of the stay. Nor did Mr. Eisenberg, or anyone else acting on the Debtor's behalf, take any action to address the violation of the automatic stay for eight (8) months after the entry of the judgment in the State Court Action—until after the Movant took further action in this court and conducted the

---

**26.** Although Mr. Eisenberg may not be the Debtor's present attorney, I have no doubt that he would have cooperated with any reasonable requests made by the Debtor for the production of evidence supporting the Debtor's position in this litigation. Indeed, Mr. Eisenberg testified on behalf of the Debtor without having been subpoenaed, explaining that he did so to support his former client.

October 2007 sheriff's sale in reliance upon the judgment. No reasonable explanation has been offered for this delay. In the circumstances presented here, I find the delay inexcusable.

It is especially troubling that the Debtor failed to raise the propriety of the default judgment when given the opportunity to do so during the Chapter 13 Case. In the Movant's motion for relief from the automatic stay, filed three (3) days after the chapter 13 bankruptcy petition was filed, the Movant specifically alleged that he held a default judgment in mortgage foreclosure, entered on February 15, 2007.[27] The Debtor's answer was essentially non-responsive: "Denied as the record speaks for itself." [28] Given the significance of the issue to the Debtor, it is hard to understand why the Debtor did not raise the violation of the automatic stay during the Chapter 11 Case as part of his defense to the stay relief motion filed in the Chapter 13 Case.[29]

Even more striking is the Debtor's subsequent withdrawal of his answer to the stay relief motion. This resulted in the entry of a stay relief Order that specifically authorized the Movant to schedule a sheriff's sale of the Subject Properties.

The § 362 Order provided for a modification of the stay:

> to allow the Movant *to enforce his mortgage by scheduling a sheriff's sale* of [the Subject Properties], and to allow the purchaser of said premises at Sheriff's Sale (or purchaser's assignee) to take any legal action for enforcement of its right to possession of said premises.

*See* Chapter 13 Docket Entry No. 25 (emphasis added).

In assessing the propriety of annulling the stay, I find it unnecessary to make specific findings that the Debtor acted purposely to lull the Movant or that his conduct was a purposeful "lying in wait." Whatever the Debtor's scienter may have been, his conduct had inequitable consequences that I may consider. In this case, I conclude that it was fundamentally unfair for the Debtor, while represented by the same counsel, to remain silent while the Movant: (1) obtained a stay relief order from this court authorizing a sheriff's sale of the Subject Properties and (2) acted in reliance on that order in the state court.[30]

My decision also is influenced by the Debtor's conduct in the two (2) bankruptcy cases that he filed. In both cases, the Debtor invoked the benefit of the automatic stay without fulfilling even the most basic of a debtor's responsibilities,

---

**27.** *See* Movant's Motion for Relief from the Automatic Stay ¶ 7 (Chapter 11 Docket Entry No. 8).

**28.** *See* Debtor's Answer to Motion for Relief from the Automatic Stay ¶ 7 (Chapter 11 Docket Entry No. 12).

**29.** I am not suggesting that the entry of the judgment in foreclosure in a prior bankruptcy case, by itself, necessarily constitutes a defense to a motion for relief from stay under 11 U.S.C. § 362(d) in a subsequent case. It is relevant, however, and it would be natural for a debtor to point out the stay violation when defending against such a motion.

**30.** To be clear, I do not analyze this case as involving a simple "waiver" of the Debtor's rights under 11 U.S.C. § 362(a). Indeed, it is questionable whether the automatic stay can be waived. *See Constitution Bank v. Tubbs,* 68 F.3d 685, 691 (3d Cir.1995); *In re Enron Corp.,* 300 B.R. 201, 213 (Bankr.S.D.N.Y. 2003). Rather, as I read the controlling Third Circuit cases, *Siciliano* and *Myers,* annulment of the automatic stay may be more akin to an application of the doctrine of laches. Application of laches-like principles is especially appropriate in this case, where the Debtor is not pursuing a bankruptcy rehabilitation and the rights of third parties are less likely to be adversely affected by holding the Debtor accountable for his failure to act.

the filing of bankruptcy schedules. At the hearing, the Debtor presented no compelling justification for his abject failure to meet his obligations as a bankruptcy debtor.[31] Without determining that the Debtor's failures amounted to a purposeful manipulation, I must question whether, in an objective sense, the Debtor's bankruptcy filings were made in good faith. *See generally In re Ferguson,* 376 B.R. 109, 123–124 (Bankr.E.D.Pa.2007) (discussing objective and subjective good faith). The Debtor's one-sided use of the bankruptcy process militates in favor of the annulment of the stay.

Finally, in reaching my decision, I have considered one countervailing consideration: the Movant's conduct after learning of the Chapter 11 Case in August 2007. The Debtor decries the Movant's conduct in proceeding with the October 2007 sheriff's sale based on a judgment that the Debtor maintains the Movant must have known to be void because it was entered in violation of the automatic stay.

To the extent that the Movant's delay in seeking annulment of the stay compounded the problems arising from the inadvertent stay violation, there is some merit to the Debtor's position. It may well have been preferable for the Movant to have requested annulment of the stay more expeditiously and, in any event, prior to the October 2, 2007 sheriff's sale. However, there are certain extenuating circumstances.

When the Movant learned of the Chapter 11 Case in August 2007, he was subject to a "new" automatic stay, the one arising in the Chapter 13 Case. Filing the Chapter 13 § 362 Motion was a natural response to the Debtor's eve-of-sheriff's sale chapter 13 filing. In these circumstances, I cannot fault him entirely for failing to realize that it may have been optimal to file a second motion, in the dismissed Chapter 11 Case, seeking annulment of the stay. And, arguably, the stay relief Order that he did obtain in the Chapter 13 Case authorized him to proceed with the sheriff's sale. At a minimum, after the entry of the § 362 Order in the Chapter 13 Case, there was some ambiguity regarding his authority to proceed with the sheriff's sale of the Subject Properties.[32]

## IV. *CONCLUSION*

For the reasons set forth above, I will grant the Motion in part and deny it in

---

**31.** Taken as a whole, the Debtor's testimony suggested that at the time each bankruptcy case was filed, he was simply too overwhelmed by other demands in his life to give the bankruptcy cases the attention that they required. His justification was too general and vague to excuse what amounts to a misuse of the bankruptcy remedy. In reaching this conclusion, I am influenced somewhat by the fact that the Debtor is not a typical individual bankruptcy debtor. He is a large scale landlord, who owns more than fifty (50) pieces of real estate.

**32.** I also observe that the Movant's action in conducting the sheriff's sale on October 2, 2007 did not itself violate any bankruptcy stay as none was then in effect. As of that date, the automatic stay in the dismissed Chapter 11 Case already had terminated by operation of law, *see* 11 U.S.C. § 362(c). The automatic

stay in the dismissed Chapter 13 Case had terminated as to the Movant by court Order entered prior to dismissal, *see* Finding of Fact No. 19. The impropriety, if any, in conducting the sheriff's sale was grounded in state law—in conducting a sheriff's sale based on a judgment that apparently was void (with that voidness being attributable to its entry in violation of federal law, 11 U.S.C. § 362(a)). *See generally In re Walker,* slip op. at 14 ("Although the Pennsylvania state courts have no power to annul the bankruptcy stay, they are empowered to ... afford appropriate ... independent of the issue of annulment"). Thus, as a matter of federal bankruptcy policy, when I weigh the Debtor's problematic conduct against the Movant's conduct, the balance tips in favor of the Movant and annulment of the stay.

part. I will: (1) vacate the dismissal Order in the Chapter 11 Case for the purpose of considering the Motion on the merits; (2) annul the automatic stay that arose in the Chapter 11 Case as to the Movant, retroactive to January 16, 2007; (3) deny all other relief requested;[33] and (4) again dismiss the Chapter 11 Case.

An appropriate Order follows.

### ORDER

**AND NOW,** upon consideration of the Motion of Nicholas Mattera ("the Movant") to Reopen Closed Case and Annul Automatic Stay ("the Motion"), the response thereto, and after a hearing, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

1. The Motion is **GRANTED IN PART AND DENIED IN PART.**

2. The court's Order entered February 22, 2007 is **VACATED** and this case is **REINSTATED** for purposes of determining whether the automatic stay should be **ANNULLED.**

3. The automatic stay that arose in the Chapter 11 Case is **ANNULLED as to the Movant, retroactive to January 16, 2007.**

4. All other relief requested in the Motion is **DENIED.**

5. The merits of the Motion having been decided, this case is again **DISMISSED.**

---

**33.** In the Motion's prayer for relief, the Movant requested that I enter an Order "validating" the October 2, 2007 sheriff's sale of the Subject Properties. I decline to do so. The question of the validity of the sheriff's sale, in light of the entry of the foreclosure judgment in violation of the automatic stay and the subsequent annulment of the automatic stay, is best determined by the state court. *See Walker,* slip op. at 14. The pending Petition to Strike provides a procedural vehicle for the state court to do so.